January, April and October Terms, 1912.

## OWEN D. SHERLEY vs. SUDIE G. SHERLEY.

*Evidence*: letters; carbon copies. *Contracts*: construction; surrounding circumstances; care of party "so long as she lives"; special agreement and assumpsit. *Prayers*: on theory of which there is no evidence. *Insurance tables*: annuities; how to be submitted to jury.

Where it is a question of admitting in evidence what purports to be carbon copies of letters written to the plaintiff by the defendant, the evidence of witnesses that at a time subsequent to the date of the letters the defendant did not make or keep carbon copies of his letters is not admissible.          p. 22

A defendant notified the plaintiff to produce certain letters which he claimed he had written to her; she refused on the ground that she had never received the letters; the defendant produced what purported to be carbon copies of them; he claimed that it was his custom to copy important letters and papers by writing on two sheets of paper with carbon paper between them; and he produced and offered in evidence certain other papers which purported to be carbon copies of other papers so written by him. *Held,* that for said papers to be admissible to prove that it was the defendant's habit to make and keep such carbon copies, the evidence should not, under the circumstances, depend upon the testimony of the defendant alone.          p. 22

Courts in construing contracts look to the language employed, the subject matter and the surrounding circumstances; they are never shut out from the same light which the parties had when the contract was executed.          p. 24

A plaintiff brought suit against her brother for the breach of an alleged oral contract between them to the effect that if she would come and keep house for him, he would board and clothe her and give her fifty cents a week so long as

she rendered him such service, and that if he married he would provide a home for her and see that she was well cared for as long as she lived. It was *held* that, in view of all the facts, the most that the contract could mean, was that the defendant, under the condition named, would contribute whatever deficiency there should be in the sister's earnings, from the amount required for her maintenance and support.

pp. 25,26

But it was further *held,* that it was error to grant instructions to the jury based on that theory, where there was no evidence whatever in the record showing what was the plaintiff's earning capacity, etc. p. 26

The plaintiff was, in any event, entitled to the wages due her up to the time of her discharge. p. 27

It is error to leave to the jury to find what is the present worth of an annuity, where there is no evidence from proper sources of what its probable worth would be. p. 26

In such cases as the tables and rules to calculate the probable present worth of annuities are not ordinarily within the knowledge and experience of jurors, such tables, etc., should be submitted to them, not as binding, but for their information and guidance only. p. 27

Where an action is brought under an oral agreement by which the services to be rendered and the compensation to be paid are specifically stated, and which is fully substantiated by the plaintiff's witnesses, and the defendant sets up a different contract also substantiated by his witnesses, there can be no recovery under another, or implied contract. p. 28

*Decided March 27th, 1912.*

Appeal from the Circuit Court for Garrett County (HENDERSON, J.). The facts are stated in the opinion of the Court.

The following are the prayers offered by the plaintiff and defendant, respectively, and the action of the trial Court thereon:

*Plaintiff's 1st Prayer.*—If the jury finds from the evidence, that on or about April 1st, 1899, or a short time prior thereto, the defendant promised and agreed with the plaintiff, that if she would come to his home in Washington county, Maryland, and keep house for him, he would in consideration for her services as such housekeeper, pay to her the sum of fifty cents per week and furnish her with boarding and clothing, as long as she so kept house for him, and if at any time the defendant should have no longer use for her services as such housekeeper, he, the defendant would furnish her with a home and provide for her as long as she lived, if the jury so find, and further finds that the plaintiff did come to the defendant's home in Washington county, Maryland, and in pursuance to said promise and agreement on the part of the defendant, did keep house for the defendant, and did do the work required of her as such housekeeper from on or about April 10th, 1899, to on or about August 31st, 1910, if the jury so finds, and further finds that the defendant, without cause on the part of the plaintiff, did on or about August 31st, 1910, notify the plaintiff that he had no further use for her services as such housekeeper, if the jury so finds, and further finds that the defendant did not pay the plaintiff in full for her services rendered by her as such housekeeper for the defendant during the time she so kept house for him, at the rate of fifty cents per week, if the jury so finds, then their verdict must be for the plaintiff; and if the jury finds the facts as hereinbefore set forth in this prayer, then their verdict must be for such amount as they shall find remains unpaid on account of services rendered by the plaintiff as such housekeeper from the time she began services as such housekeeper to the time the jury shall find she ceased such services, at the rate of fifty cents per week. (*Granted.*)

*Plaintiff's 2nd Prayer.*—If the jury shall find from the evidence, that on or about April 1st, 1899, or a short time prior thereto, the defendant promised and agreed with the plaintiff, that if she would come to his home in Washington

county, Maryland, and keep house for him, he would in consideration of her services as such housekeeper, pay to her the sum of fifty cents per week, and furnish her with boarding and clothing, as long as she so kept house for him, and if at any time the defendant should have no longer use for her services as such housekeeper, he, the defendant would furnish her with a home and provide for her as long as she lived, if the jury so finds, and further finds, that the plaintiff did come to the defendant's home in Washington county, Maryland, and in pursuance to said promise and agreement on the part of the defendant, did keep house for the defendant and did do the work required of her as such housekeeper from on or about April 10th, 1899, to on or about August 31st, 1910, if the jury so finds, and further finds, that the defendant, without cause on the part of the plaintiff, did on or about August 31st, 1910, notify the plaintiff that he had no longer use for her services as such housekeeper, if the jury so finds, and further finds, that the defendant did not furnish the plaintiff with such clothing as was reasonable for one in her station in life, for the full period during which she served as housekeeper for the defendant, then their verdict must be for the plaintiff; and if the jury shall find the facts to be as hereinbefore set forth in this prayer, then their verdict shall be for such an amount as will compensate the plaintiff for the clothing necessary and reasonable for one in the plaintiff's station in life into which she entered at the time she became his housekeeper, and which was used by her during the period which the jury may find she so kept house for the defendant, and which the jury finds the defendant failed to furnish to the plaintiff during the period which the jury shall find she served as his housekeeper. (*Granted as modified.*)

*Plaintiff's 3rd Prayer.*—If the jury finds from the evidence, that on or about April 1st, 1899, or a short time prior thereto, the defendant promised and agreed with the plaintiff, that if she would come to his home in Washington county, Maryland, and keep house for him, he would in con-

sideration of her services as such housekeeper, pay to her
the sum of fifty cents per week, and furnish her with board-
ing and clothing, as long as she so kept house for him, and
if at any time the defendant should have no longer use for
her services as such housekeeper, he, the defendant would
furnish her with a home and provide for her as long as she
lived, if the jury so finds, and further finds, that the plaintiff
did come to the defendant's home in Washington county,
Maryland, and in pursuance to said promise and agreement
on the part of the defendant, did keep house for the defend-
ant and did do the work required of her as such house-
keeper from on or about April 10th, 1899 to on or about
August 31st, 1910, if the jury so finds, and further finds,
that the defendant, without cause on the part of the plain-
tiff, did on or about August 31st, 1910, notify the plain-
tiff that he had no longer use for her services as such house-
keeper, if the jury so finds, and further finds, that on or
about August 31st, 1910, the defendant notified the plaintiff
that she should leave his home, and that he would not fur-
nish her with a home as long as she lived, and would not
provide for her as long as she lived, then their verdict must
be for the plaintiff; and if they find the facts as herein-
before set forth in this prayer, then their verdict must be
for such a sum as together with its income at a reasonable
rate of interest, and together with such sums as the plain-
tiff could reasonably contribute to her support by her earn-
ings, would be sufficient to support the plaintiff, during her
probable life, in a manner reasonable and proper for one in
the station of life into which the plaintiff entered when she
became his housekeeper, leaving nothing remaining at the
time of her death. (*Granted as modified.*)

*Plaintiff's 4th Prayer.*—If the jury find from the evi-
dence, that on or about April 1st, 1899, or a short time prior
thereto, the defendant promised and agreed with the plain-
tiff, that if she would come to his home in Washington
county, Maryland, and keep house for him, he would in con-

sideration of her services as such housekeeper, pay to her the sum of fifty cents per week, and furnish her with boarding and clothing, as long as she so kept house for him, and if at any time the defendant should have no longer use for her services as such housekeeper, he, the defendant, would furnish her with a home and provide for her as long as she lived, if the jury so finds, and further finds that the plaintiff did come to the defendant's home in Washington county, Maryland, and in pursuance to said promise and agreement on the part of the defendant, did keep house for the defendant and did do the work required of her as such housekeeper from on or about April 10th, 1899, to on or about August 31st, 1910, if the jury so finds, and further finds, that the defendant, without cause on the part of the plaintiff, did on or about August 31st, 1910, notify the plaintiff that he had no further use for her services as such housekeeper, if the jury so finds, and further finds, that the defendant did not pay the plaintiff in full for her services rendered by her for the defendant during the time she so kept house for him, at the rate of fifty cents per week, if the jury so finds, and further finds, that the defendant did not furnish the plaintiff with clothing as was reasonable for one in her station of life, for the full period during which the jury shall find she so served as housekeeper for the defendant, then their verdict must be for the plaintiff; and if the jury shall find the facts to be as hereinbefore set forth in this prayer, then their verdict must be for such an amount as they shall find remains unpaid on account of services rendered as such housekeeper by the plaintiff for the period during which the jury may find she served as such housekeeper, at the rate of fifty cents per week, and also in addition such sum as will compensate the plaintiff for the clothing necessary and reasonable for one in the plaintiff's station of life into which she entered at the time of her employment by defendant, and which the jury may find was used by the plaintiff during the period which she served as such housekeeper and which the jury

finds the defendant failed to furnish the plaintiff during the period which the jury may find she served as such housekeeper. (*Granted as modified.*)

*Plaintiff's 5th Prayer.*—If the jury finds from the evidence, that on or about April 1st, 1899, or a short time prior thereto, the defendant promised and agreed with the plaintiff, that if she would come to his home in Washington county, Maryland, and keep house for him, he would in consideration of her services as such housekeeper, pay to her the sum of fifty cents per week, and furnish her with boarding and clothing, as long as she so kept house for him, and if at any time the defendant should have longer no use for her services as such housekeeper, he, the defendant, would furnish her with a home and provide for her as long as she lived, if the jury so finds, and further finds, that the plaintiff did come to the defendant's home in Washington county, Maryland, and in pursuance to said promise and agreement on the part of the defendant, did keep house for the defendant and did do the work required of her as such housekeeper from on or about April 10th, 1899, to on or about August 31st, 1910, if the jury so finds, and further finds, that the defendant, without cause on the part of the plaintiff, did on or about August 31st, 1910, notify the plaintiff that he had no further use for her services as such housekeeper, if the jury so finds, and further finds, that the defendant did not pay the plaintiff in full for her services rendered by her for the defendant as housekeeper during the time she so kept house for him, at the rate of fifty cents per week, if the jury so finds, and further find, that on or about August 31st, 1910, the defendant notified the plaintiff that she should leave his home and that he would not furnish her with a home as long as she lived, and would not provide for her as long as she lived, then their verdict must be for the plaintiff; and if they find the facts as hereinbefore set forth in this prayer, then their verdict may be for such a sum as they shall find remains unpaid on account of services

rendered by the plaintiff as such housekeeper for the defendant for the period during which the jury shall find she served as such housekeeper, at the rate of fifty cents per week, and also in addition to the above sum, such an amount together with its income at a reasonable rate of interest, and with such sum as the plaintiff could reasonably contribute to her support by her earnings, would be sufficient to support the plaintiff during the plaintiff's probable life, in a manner reasonable and proper for one in the station of life into which she entered at the time of her employment by defendant as his housekeeper, leaving nothing remaining at the time of her death. (*Granted as modified.*)

*Plaintiff's 6th Prayer.*—If the jury finds from the evidence, that on or about April 1st, 1899, or a short time prior thereto, the defendant promised and agreed with the plaintiff, that if she would come to his home in Washington county, Maryland, and keep house for him, he would in consideration of her services as such housekeeper pay to her the sum of fifty cents per week, and furnish her with boarding and clothing, as long as she so kept house for him, and if at any time the defendant should no longer have use for her services as such housekeeper, he, the defendant, would furnish her with a home and provide for her as long as she lived, if the jury so finds, and further finds, that the plaintiff did come to the defendant's home in Washington county, Maryland, and in pursuance to said promise and agreement on the part of the defendant, did keep house for the defendant and did do the work required of her as such housekeeper from on or about April 10th, 1899, to on or about August 31st, 1910, if the jury so finds, and further finds, that the defendant, without cause on the part of the plaintiff, did on or about August 31st, 1910, notify the plaintiff that he had no further use for her services as such housekeeper, if the jury so finds, and further finds, that the defendant did not furnish the plaintiff with clothing as was reasonable for one in the plaintiff's station in life for the full period during

which she served as housekeeper for the defendant, if the jury so finds, and further finds, that on or about August 31st, 1910, the defendant notified the plaintiff that she should leave his home and that he would not furnish her with a home as long as she lived and would not provide for her as long as she lived, if the jury so finds, then their verdict must be for the plaintiff; and if they find the facts as hereinbefore set forth in this prayer, then their verdict must be for such sum as will compensate her for the clothing necessary for one in her station in life into which she entered at the time of her employment by the defendant, and which was used by her during the period which the jury may find she so kept house for the defendant, and which the jury may find the defendant failed to furnish for her during said period, and in addition to above sum, such an amount as, together with its income, at a reasonable rate of interest, and together with such sums as she could reasonably contribute to her support by her earnings, would be sufficient to support plaintiff during the plaintiff's probable life, in a manner reasonable and proper for one in the station of life into which she entered by becoming defendant's housekeeper, leaving nothing remaining at the time of her death. (*Granted as modified.*)

*Plaintiff's 7th Prayer.*—If the jury finds from the evidence, that on or about April 1st, 1899, or a short time prior thereto, the defendant promised and agreed with the plaintiff, that if she would come to his home in Washington county, Maryland, and keep house for him, he would in consideration of her services as such housekeeper, pay to her the sum of fifty cents per week, and furnish her with boarding and clothing, as long as she so kept house for him, and if at any time the defendant should no longer have use for her services as such housekeeper, he, the defendant, would furnish her with a home and provide for her as long as she lived, if the jury so finds, and further finds, that the plaintiff did come to the defendant's home in Washington county,

Maryland, and in pursuance to said promise and agreement on the part of the defendant, did keep house for the defendant and did do the work required of her as such housekeeper from on or about April 10th, 1899, to on or about August 31st, 1910, if the jury so finds, and further finds, that the defendant, without cause on the part of the plaintiff, did on or about August 31st, 1910, notify the plaintiff that he had no further use for her services as such housekeeper, if the jury so finds, and further finds, that the defendant did not pay the plaintiff in full for her services rendered as housekeeper for the defendant during the time the jury shall find she so kept house for the defendant, at the rate of fifty cents per week, if the jury so finds, and further finds, that the defendant did not furnish the plaintiff with clothing as was reasonable for one in plaintiff's station in life, for the full period during which the jury may find she served as such housekeeper; if the jury so finds, and shall further find, that on or about August 31st, 1910, the defendant notified the plaintiff that she should leave his home, and that he would not furnish her with a home as long as she lived and would not provide for her as long as she lived, if the jury so finds, then their verdict must be for the plaintiff; and if the jury finds the facts as hereinbefore set forth in this prayer, then their verdict may be for such an amount as will cover what the jury may find remains unpaid on account of services as such housekeeper for the period during which the jury may find she served as such housekeeper, at the rate of fifty cents per week, and also what the jury may find will compensate the plaintiff for the clothing necessary and reasonable for one in the station in life into which she entered at the time of her employment by defendant, and which was used by her during the period which the jury may find she so kept house for the defendant, and which the jury may find the defendant failed to furnish for her during said period, and in addition to above, such an amount, as together with its income, if invested at a reasonable rate of interest, and

together with such sums as the plaintiff could reasonably contribute to her support by her earnings, would be sufficient for the support of the plaintiff during her probable life, in a manner reasonable and proper for one in her station of life at the time of her employment by the defendant, leaving nothing remaining at the time of her death. (*Granted as modified.*)

*Plaintiff's 8th Prayer.*—If the jury finds from the evidence, that the contract or agreement was made between the plaintiff and defendant as set forth in the first prayer of the plaintiff, and further find that in pursuance of said contract or agreement, plaintiff entered the service of the defendant as housekeeper for the defendant, if the jury so finds, and further finds, that the plaintiff while serving as such housekeeper for the defendant, did in the year 1901 spend several months at her former home, near Winchester, Virginia, waiting and attending upon an ill brother, if the jury so finds, and further finds, that such absence from the home of the defendant by the plaintiff in waiting and attending upon said ill brother was with the consent or at the request of the defendant, if the jury so finds, and further finds, that upon the plaintiff's return to the home of the defendant she resumed her former duties in the home of the defendant as his housekeeper, then such absence on the part of the plaintiff from the home of the defendant and from her duties as such housekeeper does not abrogate or terminate said contract or agreement. (*Granted.*)

*Plaintiff's 9th Prayer.*—If the jury find from the evidence, that the contract or agreement was made between the plaintiff and the defendant, as set forth in the first prayer of the plaintiff, and further find that in pursuance to said contract or agreement, plaintiff entered the service of the defendant as housekeeper for the defendant, if the jury so finds, and further finds, that the plaintiff while serving as such housekeeper for the defendant, did other work on her own account, and that such other work done on her own

account, was not done at times which interfered with her
duties as such housekeeper for the defendant, if the jury so
find, and further find, that such other work done on her own
account was not inconsistent with her duties as such house-
keeper for the defendant, and further find, that such other
work done on her own account was not injurious to the
interests of the defendant, if the jury so find, and further
find, that such other work done on her own account did not
impair. the value of her services to the defendant as such
housekeeper for the defendant, if the jury so finds, then the
act of the plaintiff in doing such other work on her own
account, gives no right to the defendant to terminate said
agreement or contract.   (*Granted.*) .

*Plaintiff's 10th Prayer.*—The plaintiff prays the Court to
instruct the jury that if the jury find the plaintiff served
the defendant as housekeeper from on or about April 10th,
1899, to on or about August 31st, 1910, if the jury so find,
and that the plaintiff's services as such housekeeper for the
defendant were accepted by the defendant, if the jury so
find, then even though the jury may find that there was no
special contract or agreement between the plaintiff and
defendant in regard to the plaintiff's services as such house-
keeper for the defendant, if the jury find such services were
rendered by the plaintiff for the defendant, their verdict
must be for the plaintiff for such an amount as the jury
may find such services were reasonbly worth, less such an
amount, if any, that the jury may find has been paid by the
defendant to the plaintiff on account of such services.
(*Rejected.*)

*Plaintiff's 11th Prayer.*—The plaintiff prays the Court
to instruct the jury, that if the jury find the plaintiff served
the defendant as housekeeper, from on or about April 10th,
1899, to on or about August 31st, 1910, if the jury so find,
and that the plaintiff's services as such housekeeper for the
defendant were of such a nature or were rendered under
such circumstances as to lead under all of the circumstances

of this case, to a reasonable belief that it was the understanding of the parties, that pecuniary compensation should be made for them from the defendant to the plaintiff, if the jury so finds, then the jury should find an implied promise on the part of the defendant to pay the plaintiff for such services, and their verdict should be for the plaintiff for such an amount as the jury shall find such services were reasonably worth for the period the jury may find she so served as his housekeeper, less such an amount, if any, that the jury may find has been paid by the defendant to the plaintiff on account of such services.  (*Granted as modified.*)

*Defendant's 3rd Prayer.*—The defendant prays the Court to instruct the jury that under the pleadings in this cause there is no evidence legally sufficient to entitle the plaintiff to recover upon the 3rd count of the plaintiff's declaration. (*Rejected.*)

*Defendant's 5th Prayer.*—The defendant prays the Court to instruct the jury that under the pleadings in this cause there is no evidence legally sufficient to entitle the plaintiff to recover upon the fifth count of the plaintiff's declaration. (*Rejected.*)

*Defendant's 7th Prayer.*—The defendant prays the Court to instruct the jury that under the pleadings in this cause there is no evidence legally sufficient to entitle the plaintiff to recover upon the seventh count of the plaintiff's declaration.  (*Rejected.*)

*Defendant's 11th Prayer.*—The defendant prays the Court to instruct the jury that under the pleadings in this cause there is no evidence legally sufficient to entitle the plaintiff to recover upon the eleventh count of the plaintiff's declaration (*Rejected.*)

*Defendant's 12th Prayer.*—The defendant prays the Court to instruct the jury that under the pleadings in this cause there is no evidence legally sufficient to entitle the plaintiff to recover and their verdict must be for the defendant. (*Rejected.*)

*Defendant's 14th Prayer.*—The defendant prays the Court to instruct the jury that if they find from the evidence that the defendant wrote the letter dated March 26th, 1899, testified to by him, and further find that the plaintiff received said letter on or before April 10th, 1899, and further find that in pursuance thereto the plaintiff went to Hagerstown and performed the services as housekeeper as testified to by the plaintiff, and further find that the defendant did.furnish to the plaintiff her board while she was performing services as aforesaid, and further find that the defendant has paid the plaintiff as wages a sum equal to or greater in amount than 50 cents per week from April 10th, 1899, to August 31st, 1910, then their verdict must be for the defendant. (*Granted as modified.*)

*Defendant's 15th Prayer.*—The defendant prays the Court to instruct the jury that if they find from the evidence that the plaintiff entered the defendant's home and performed the services there as housekeeper, as testified to by the witnesses, in pursuance of the offer made in the letter dated March 26th, 1899, and a copy of which was introduced in evidence, if the jury so find, then the jury are instructed that the whole of said contract is contained in said letter, and they are not to consider any testimony of conversations between the plaintiff and defendant as affecting the terms of the agreement or understanding between the plaintiff and defendant. (*Rejected.*)

*Defendant's 16th Prayer.*—The defendant prays the Court to instruct the jury that if they find from the evidence, that the defendant wrote the letter dated March 26th, 1899, as testified by him, and further find that the plaintiff received said letter on or before April 10th, 1899, and further find that in pursuance thereto the plaintiff came to Hagerstown and performed the services as such housekeeper, as testified to by her, then the plaintiff is not entitled to recover upon the eleventh count of the declaration. (*Rejected.*)

*Defendant's 17th Prayer.*—The defendant prays the Court to instruct the jury that even if they find from the evidence,

that the defendant wrote the letter dated the —— day of
——, 1898, and addressed to the defendant's sister, Ella
Sherley, if the jury so find, the jury are instructed that
there is no evidence in this cause legally sufficient to show
that the defendant ever entered into a contract to provide
for the said sister, Ella Sherley, for and during the term of
her life. (*Rejected.*)

*Defendant's 18th Prayer.*—The defendant prays the Court
to instruct the jury that even if they find from the evi-
dence, that the defendant wrote the letter dated the ——
day of ——, 1898, and addressed to the defendant's sister,
Ella Sherley, if the jury so find, yet the jury is instructed
that there is no evidence in this case legally sufficient to
show that the defendant ever offered to enter into a contract
or to bind himself legally to provide for the said sister,
Ella Sherley, for and during the term of her life. (*Rejected.*)

*Defendant's 19th Prayer.*—The defendant prays the Court
to instruct the jury that even if they find from the evidence,
that the terms of the contract or agreement between the
plaintiff and defendant were substantially as testified to by
the plaintiff, and further find that the plaintiff entered
upon the employment of the defendant under and by virtue
of the said contract or agreement, and further find that
whilst so engaged in the performance of said services the
defendant notified her that he no longer had need of her
services and that he desired her to vacate his house on or
about July 15th, 1910, and further find that the plaintiff
failed and refused to remove from the defendant's house at
said time, and further find that against the wish and the
protest of the defendant she remained in said house until
on or about the 31st day of August, 1910, and further find
that the defendant, in order to have her removed from his
said home, was compelled to put her out, then the jury is
instructed that such failure to vacate was such a breach on
her part of said contract as to deprive her of the right to
recover under it. (*Rejected.*)

*Defendant's 21st Prayer.*—The defendant prays the Court to instruct the jury that if they find from the evidence in this cause, that the plaintiff is the sister of the defendant and performed the services claimed for in this action, whilst living in the defendant's home, and whilst a member of his household, if the jury so find, then under the pleadings in this cause there is no evidence legally sufficient to entitle the plaintiff to recover, unless the jury further find that the plaintiff received the letter of March 26th, 1899, if the jury so find, and that said services were performed by the plaintiff in pursuance of said letter. (*Rejected.*)

*Defendant's 22d Prayer.*—The defendant prays the Court to instruct the jury that if they find from the evidence in this cause, that the plaintiff is the sister of the defendant, and performed the services claimed for in this action, whilst living in his home and whilst a member of his household, and further find that during the time when said services were being performed, if the jury so find, the plaintiff without the knowledge or consent of the defendant, removed from the defendant's home property belonging to him, for the purpose of appropriating the said property, or the proceeds of the sale thereof, to her own use, and further find that the defendant had no knowledge of said removal prior to August 31st, 1910, then under the pleadings in this cause the plaintiff is not entitled to recover, unless the jury shall further find that the defendant is indebted unto the plaintiff for such services as were rendered, prior to the removal of said property, if the jury so find. (*Rejected.*)

*Defendant's 23rd Prayer.*—The defendant prays the Court to instruct the jury, that if they find from the evidence that the plaintiff and defendant entered into the contract testified to by the plaintiff, and further find the plaintiff performed the services as testified to, in pursuance of said contract, and further find that the plaintiff while engaged as aforesaid, removed from the defendant's house property belonging to the defendant, and further find that said removal, if the jury so find, was made without the

knowledge of the defendant and for the purpose of appropriating the said property, or the proceeds of the sale thereof, to the use of the plaintiff, and further find that the defendant had no knowledge of said removal prior to August 31st, 1910, then the plaintiff is not entitled to recover, unless the jury shall further find that she has not been paid in full for the service actually rendered by her, and then only for the amount, if any, that the jury may find is still due. (*Granted as modified.*)

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*Frank G. Wagaman* and *Charles D. Wagaman* (with whom was *Wm. R. Offutt* on the brief), for the appellant.

*A. J. Long* (with whom were *L. R. Yourtee, A. T. Matthews* and *G. S. Hamill, Jr.*, on the brief), for the appellee.

PATTISON, J., delivered the opinion of the Court.

The suit in this case was instituted by the appellee against her brother, the appellant, upon an alleged oral agreement said by the plaintiff to have been entered into by and between her and the defendant in the year 1899, by which the plaintiff was to keep house for the defendant, and for which he was to board and clothe her and pay to her fifty cents a week so long as she should render such services, and when he should cease to need them he would provide for her a home and see that she was well cared for so long as she lived.

The declaration, when filed, contained the seven common counts and four special counts. Four of the common counts and three of the special counts have been abandoned. The three common counts remaining in the declaration are: (3) for work done and material provided; (5) for money paid

by the plaintiff for the defendant at his request; (7) for
money found to be due on accounts stated between them.
.The eleventh count, the only special count remaining, sets
out the alleged oral agreement and alleges that the plaintiff
performed the work required of her under such. agreement
from April 10th, 1899, to August 31st, 1910, and then
assigns the following breaches: (1) that the defendant failed
to furnish the plaintiff with clothing; (2) that he did not
pay the plaintiff the fifty cents per week that under the
alleged contract he was to ·pay her; and (3) that he dis-
pensed with her services and refused to permit her to remain
in his .home and refused and failed to furnish her with a
home and to provide for her thereafter.

To the declaration the defendant pleaded "never prom-
ised as alleged," and "never was indebted as alleged." Upon
the trial of the case the jury rendered a verdict for the
plaintiff in the sum of fourteen hundred dollars.   In the
course of the trial seven exceptions were noted to the rulings
of the Court upon the admission of evidence, and one to the
ruling of the Court upon the prayers.   The defendant's
counsel, however, in their written brief and in their oral
argument discuss only the third and seventh exceptions to
the ruling upon the evidence.   Whether thereby it was their
purpose and intention to abandon the other exceptions was
not made known by them, but whether they intended to
abandon them or not, we think the Court committed no
error in its ruling upon such exceptions.

At the time this contract was said to have been made, the
defendant, a carpenter, then a young man twenty-two years
of age, was residing in Hagerstown, Md., and at work at his
trade.   His sister, the plaintiff,. about two years younger,
was employed at domestic work in the family of a farmer
living near Winchester, Va., receiving only a small com-
pensation for such work.   The defendant's father and mother
were also living near Winchester on a farm, and two of his
sisters, one married and one single, lived at Hagerstown.

The single sister was employed by Updegraff in making gloves.

The defendant had bought a lot of land in the City of Hagerstown for which he paid $150.00 and upon which he built a house costing eight hundred dollars; the money with which he built it was borrowed. The house and lot, subject to such indebtedness, was at that time the only property of the defendant.

The plaintiff contends that it was at the solicitation of her brother while at their father's home in Winchester, in the presence of their mother, that the oral agreement upon which this suit was instituted was made. At that time the defendant's house was in the course of construction and the plaintiff was to wait until it was ready for occupancy before going to Hagerstown. Later, the plaintiff received from the defendant a letter, appearing in the record, dated April 3. 1899, notifying her that the house was ready for occupancy and asking her to come over and assume the duties that she was to perform. That in consequence of this oral agreement and in response to the letter from her brother, she on April 7th, 1899, went to Hagerstown and from that date until August 31st, 1910, kept house for her brother, the defendant.

The defendant denies the agreement set up by the plaintiff, and contends that her coming to Hagerstown and keeping house for him was suggested by her, who said she was tired of the work at which she was employed and wished to come to Hagerstown to learn glove making. That he consented that she should come and keep house for him, but feeling that she should not do so for nothing, wrote her a letter dated March 26th, 1899, which also appears in the record, in which he said: "I have been thinking * * * that you could not take care of the house for nothing as you offered to do, so I will give you fifty cents a week and your board." This the defendant claims was all that was ever said in relation to what she was to receive for her services in keeping house for him, until about the time that he noti-

fied her, in the year 1910, that he was to be married and her services would not thereafter be needed.

The testimony as to what was the contract or agreement existing between them is, indeed, very conflicting, and it is confined chiefly to the immediate members of the family. The defendant gave notice to the plaintiff to produce the letter of March 26th. In reply to such notice the counsel for the plaintiff stated that she had not received such letter. The defendant then testified! that he wrote the letter and mailed it to his sister at White Hall, Frederick County, who was at the time at David Hott's, and the letter was never returned to him. He kept a copy of his letter. At that time he "had a way of keeping copies of letters by inserting a carbon sheet of paper between two sheets and writing on them." That he kept copies of other papers which he then had. Among them was a copy of a letter that he "wrote to a man," another was a list of lumber. A carbon copy of a paper dated as of October 24th, 1899, was then offered in evidence, the admission of which was objected to by the plaintiff, and the Court sustaining the objection, exception was noted. This forms the third bill of exceptions and will be considered with the seventh exception.

The defendant then offered a copy of his letter dated March 26th, 1899, which was admitted in evidence. In speaking of this letter upon cross-examination the defendant said that he kept carbon copies of all important letters; he regarded this as an important letter, although he could not remember of keeping any other carbon copies of letters that he wrote to his brothers or sisters.

The plaintiff when called in, rebuttal testified that she never received any letter from the defendant other than the one dated April 3rd, 1899. When she went to Hagerstown to live with her brother he did not have any office, he did his clerical work at home; that she had charge of that part of the house as well as the rest and did some of the work; the defendant did not have any carbon sheets, he did not keep carbon copies of papers. Nannie Sherley, the sister of the

plaintiff who lived with the plaintiff and defendant, when called in rebuttal, testified that the defendant, after the plaintiff moved to Hagerstown, had his office in the dining room a while and then in the kitchen and she saw him writing letters but he did not at such times use carbon paper.

The defendant, when called in sur-rebuttal, was shown four papers and was asked what they were, to which he replied: "These are carbon copies. Q. Bearing what dates? A. February 23, 1900, October 24, 1899, February 20, 1897, and October 7, 1899. Q. By whom were they made? A. By me. Q. When? A. At the dates there stated. Q. Where?" To each of the above questions the plaintiff objected but her objections were overruled and in each case exception was reserved, but when made to the last question the Court sustained the objection and directed the stenographer to strike out the above answers admitted under objections of the plaintiff, to which the defendant excepted. This forms the seventh bill of exceptions.

It was stated by the counsel for the defendant that these papers were offered for the purpose of showing that the defendant had an outfit with which to make carbon copies in 1899. It will be recalled that the defendant testified that the carbon copies of papers made by him, including the copy of the letter of March 26th, which letter he said he mailed to his sister, were made simply by inserting carbon paper between two sheets of paper and writing upon one of them. No other outfit or other means of making such copies was claimed by him to have been used. He further testified that he did not make copies of all letters written by him, but only such as he regarded important. Thus it was not his custom or habit to keep copies of all letters written by him, but only such as were important. The copies offered in evidence are not even shown to be copies of letters, but are referred to as carbon copies of papers. The fact here sought to be ascertained by the proffered testimony is, whether or not the carbon copy of the letter of March 26th, 1899, from the

defendant to the plaintiff, was made upon the date when the letter is said to have been written and mailed to the defendant. He testified that it was and this fact is in evidence. The testimony of the sisters as to whether or not he made carbon copies of papers or letters applies to a time after this letter was written. Whether he had carbon paper at the time this letter was written and whether the carbon copy was then made was not within the knowledge of the plaintiff or her sister Nannie. The letter was written at a time before the defendant and his sisters moved in the house of which they speak in their testimony, and we do not think their testimony on this point was admissible.

The fact that the copies of the papers offered in evidence were made at the time they were written, or that the papers were written as of the dates given, is, like the letter of March 26th, dependent solely upon the testimony of the defendant. It is contended by the plaintiff that the carbon copy of the letter of March 26th, 1899, is not genuine, but was made for the needs of this case. If the testimony where otherwise admissible, and we do not think it is, to escape this criticism and to show that the copy of the letter of March 26th was made at the time the letter was written and dated, the fact that the copies of the other papers, if letters, so offered in evidence, were made at the time they are dated, should not depend alone upon the testimony of the defendant. We think the Court committed no error in its rulings on the third and seventh exceptions.

At the conclusion of the case the plaintiff offered eleven prayers, and the defendant twenty-three prayers. The Court granted the plaintiff's first, eighth and ninth prayers as presented, and the second third, fourth, fifth, sixth, seventh and eleventh prayers as modified, and rejected the plaintiff's tenth prayer. Of the defendant's prayers the first, second, fourth, sixth, eighth, ninth, tenth, thirteenth and twentieth do not appear in the record. The Court granted the defendant's fourteenth and twenty-third prayers as modi-

fied, and rejected his third, fifth, seventh, eleventh, twelfth, fifteenth, sixteenth, seventeenth, eighteenth, nineteenth, twenty-first and twenty-second prayers. To the granting of the plaintiff's second, third, fourth, fifth, sixth and seventh prayers as modified the defendant filed special exceptions. The Court below overruled these special exceptions, and the defendant excepted to the overruling of his special exceptions, and to the granting of the plaintiff's granted prayers as presented and modified, and to the rejection of his rejected prayers. The defendant neither in his brief nor in his oral argument discusses his 3rd, 12th, 17th, 18th, 19th, 21st and 22nd prayers, and we find no error in the Court in the rejection of these prayers. To the ruling of the Court in granting his 14th and 23rd prayers as modified the defendant did not except. Nor does he urge any exception to the granting of the plaintiff's first prayer.

The plaintiff in this case in stating what the contract was between her and her brother, the defendant, said that the defendant in his conversation at the home of her mother near Winchester, Va., said "he wanted me to come and keep house for him, that he might have a home, and he told me he would board and clothe me and give me fifty cents a week for spending money as long as I kept house for him. That he did not want to get married and did not expect to. I said, well if I come down and you would get married after we made money, I would be out. He said he did not want to get married, but if he ever should, he would provide me a home and see that I was well cared for." And later in her testimony she extended the time in which he was to see her well cared for to so "long as she lived."

The learned Court below in stating the measure of damages in his instructions to the jury in plaintiff's 3rd, 5th, 6th and 7th prayers, construed this contract to mean that in the event of her services being dispensed with, she was to contribute the amount of her earnings to her own support, and that the defendant under his promise to provide for her

a home and to see her well cared for, was to contribute
thereto what was necessary after the application of her own
earnings to her maintenance and support.

"The rule of construction was stated, with great clearness,
in *Nash* v. *Towne,* 5 Wallace, 699, as follows: Courts, in the
construction of contracts, look to the language employed, the
subject-matter and the surrounding circumstances. They
are never shut out from the same light which the parties
employed when the contract was executed, and, in that view,
they are entitled to place themselves in the same situation
as the parties who made the contract, so as to view the cir-
cumstances as they viewed them, and so to judge of the
meaning of the words and of the correct application of the
language to the things described." *Milske* v. *Steiner Man-
tel Co.,* 103 Md. 235.

After thoughtfully considering this contract and after
examining all the authorities to which we have been referred,
we are of the opinion that the construction so placed upon
this contract by the learned Court below is, at least, as favor-
able to the plaintiff as could be asked for by her. We do
not think under all the facts and circumstances of this case,
the condition of the parties at the time the contract was
entered into, that it could have been the intention of the
defendant or that it could have been understood by the
plaintiff that when her services were no longer needed she
should thereafter be relieved of all effort on her part of
maintaining herself, and that the whole burden of her main-
tenance and support should fall upon the defendant. While
the evidence is conflicting, there is much evidence in the
case going to show that she was dissatisfied with her employ-
ment in Virginia, that the work she had to do was irksome
and of such a character as would naturally lead the plain-
tiff to wish for better employment. In the family in which
she was employed she was required, as she admits herself,
at times to milk the cows and to do other work that naturally
would be distasteful to her, at extremely small wages. Her

sisters were in Hagerstown one of them married and the other engaged in glove making. The testimony offered on the part of the defendant shows that one of her objects in going to Hagerstown was to learn glove making. Although this is denied by her, we, nevertheless, find her after reaching Hagerstown engaging in work of this character. The time at which she started this work varies, some of the witnesses putting it at a very short time after she settled there, while she states it was five or six years thereafter, but in any event she did engage in such work, and the evidence discloses that she was enabled to accumulate money at that and other work. She and the defendant with her sister who paid board, lived together under the arrangements made by the plaintiff and defendant, whatever they were, for more than ten years, and we may add, so far as the evidence discloses, lived pleasantly and happily together, until the defendant notified her of his intention to marry and to bring his wife into his home, at which time the services of the plaintiff would no longer be needed. It was then that they became very much estranged, and from that time until final separation their relations were anything but what should be found existing between brother and sisters. Charges and counter-charges were brought by each. In an effort to amicably settle this matter, the providing of a house for the plaintiff was discussed and different ones belonging to the defendant were mentioned, the defendant offering to furnish such house for a limited time and the plaintiff apparently entertaining such suggestion, until it seemed that the claim on the part of the plaintiff to the ownership of a piano broke off all further negotiations along this line. The plaintiff contends, however, that under her contract with the defendant she should not be limited in the time in which he was to furnish her a house in which to live. There was no suggestion or claim made by the plaintiff during the pending of these negotiations that the defendant was to maintain and support her exclusive of her earnings resulting from her own

efforts.   As we have said, we think this construction was
indeed most liberal to the plaintiff.   But in the granting of
these prayers we think the Court erred, because of the fact
that there is no evidence whatever to be found in the record
showing what the plaintiff was capable of earning by her
own efforts and without this testimony the jury would be
unable to ascertain what amount would be necessary for the
defendant to contribute in order to supply the deficiency, if
any, in the amount required for her maintenance and sup-
port.

It is also contended by the defendant that from the evi-
dence submitted to the jury, they could not properly and
intelligently arrive at the "amount which, together with its
income at a reasonable rate of interest * * * would be suffi-
cient to support the plaintiff during her probable life, * * *
leaving nothing remaining at the time of her death," as
instructed by the Court in plaintiff's third, fifth, sixth and
seventh prayers.

The plaintiff offered the evidence of Sliger, an insurance
agent, who testified that from the American mortality tables
used by practically all the insurance companies, the expect-
ancy of life of a person of her age, thirty-four years, was
thirty-two and five-tenths years.   After proving this fact, the
plaintiff then proceeded to prove by other witnesses what
would be the cost of board and clothes for the plaintiff
per annum, and from these facts the jury was to ascertain
"an amount which, together with its income at a reasonable
rate of interest, * * * would be sufficient to support the
plaintiff during her probable life, * * * leaving nothing
remaining at the time of her death."   This was equivalent
to instructing the jury to find from these facts what was
the present worth of an annuity (such annuity being the
amount of such cost of board and clothes per annum) for
one of her age.   This, we think, the jury could not intelli-
gently do without some evidence, gathered from the proper
source, of what would be the probable present worth of
such annuity.   The tables and rule upon which the prob-

able present worth of annuities is ascertained are not ordi-
narily within the knowledge of jurors and should have been
submitted to them. Of course, these would not have been
absolutely binding upon the jurors, for the health of the
individual and other causes might affect the amount of
the probable present worth of the annuity as established
by such tables and rule, nevertheless it should have been
submitted to the jury.

The contention is also made by the defendant that the
eleventh count of the declaration is defective because of
duplicity in seeking to recover for three distinct breaches
of the contract which will be seen by examination of the
eleventh count of the declaration, or at least that part of
the declaration assigning the breaches which we have here-
inbefore set out. There is some difference of opinion between
the members of the Court as to the effect of the eleventh
prayer of the defendant. We will not, therefore, now pass
on that prayer, but will add that before another trial the
eleventh count should be amended so as to avoid any ques-
tion of duplicity.

We think there is no force in the objection urged against
the second and fourth prayers of the plaintiff, by which
the jury is required to say whether there was cause for
the discharge, even though the law in respect thereto should
be as contended for by the defendant, for her right to
recover for the amount of wages and clothing owing to
her at the time of her dismissal would not be affected thereby.

We find no error in the granting of the first prayer in
which the jury is instructed as to her right to recover for
money owing to her as wages at the time of her dismissal.
Nor do we find any error committed by the Court below in
granting the plaintiff's eighth and ninth prayers.

By the plaintiff's eleventh prayer the jury was instructed
that if they should "find that the plaintiff served the defend-
ant as housekeeper from on or about April 10th, 1899, to
on or about August 31st, 1910, if the jury shall so find, and
that the plaintiff's services as housekeeper for the defendant

were of such a nature or were rendered under such circumstances as to lead, under all the circumstances of this case, to a reasonable belief that it was the understanding of the parties that a pecuniary compensation was to be made from the defendant to the plaintiff, if the jury so find, then the jury should find an implied promise on the part of the defendant to pay the plaintiff for such services, and their verdict shall be for the plaintiff for such an amount as they shall find such services were reasonably worth for the period the jury may find she so served as his housekeeper, less such an amount, if any, as the jury may find, has been paid to the plaintiff by the defendant on account of such services."

This action, as we have stated, was brought upon an oral agreement in which the services to be rendered and the amount to be received therefor by the plaintiff are specifically stated, and the evidence offered by the plaintiff fully supports the agreement as set up by her. On the other hand, the defendant in defence of this action, sets up a different contract, one in which the services to be rendered and the amount the plaintiff was to receive therefor are also specifically stated, and which contract, as he alleges, he fully performed. The terms and existence of the defendant's alleged contract are likewise fully supported by the witnesses offered by him. Thus we think there can be no recovery in this case upon an implied contract and that the Court erred in granting the eleventh prayer of the plaintiff.

Without further prolonging this opinion by a discussion of them, we think the Court below committed no error in rejecting the defendant's third, fifth, twelfth, fifteenth, sixteenth, seventeenth, eighteenth, nineteenth, twenty-first and twenty-second prayers. We think, however, the Court erred in not granting the defendant's seventh prayer, where the Court was asked to instruct the jury that under the pleadings in the case there was no legally sufficient evidence to entitle the plaintiff to recover under the seventh count of the plaintiff's declaration. We think this prayer should have been granted.

From what we have said, the judgment of the Court below will be reversed.

> *Judgment reversed, new trial awarded, with costs to the appellant.*