# WALSTON, ETC., ET AL. *v.* SUN CAB COMPANY, INC.

[No. 121, September Term, 1972.]

*Decided  January  4,  1973.*

The cause was argued before BARNES, MCWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*Melvin J. Sykes* for appellants.

*Matthew Swerdloff,* with whom were *Edward P. Murphy* and *Swerdloff, Rabineau & Murphy* on the brief, for appellee.

BARNES, J., delivered the opinion of the Court.

This case is before us as a result of our granting a writ of certiorari on July 29, 1972, directed to the Court of Special Appeals upon the petition of Richard B. Walston, etc., et al., appellees in the case of *Sun Cab Company, Inc., et al. v. Richard B. Walston, etc., et al.,* 15 Md. App. 113, 289 A. 2d 804, decided by the Court of Special Appeals on April 17, 1972, they becoming appel-

lants in No. 121, September Term, 1972, now before this Court for decision.

On September 21, 1972, the appellants in the present case before us filed a motion to strike portions of the brief of the appellee, Sun Cab Company, Inc. (Sun Cab), on the principal ground that such portions of Sun Cab's brief related to points decided adversely to it by the Court of Special Appeals, but in regard to which Sun Cab had filed no cross-petition for certiorari so that those points were not properly before us for review.[1] We denied this motion on October 11, 1972, without prejudice to renew the motion and argue it at the time of the argument on the merits. The appellants did renew their motion to strike at the time of argument and counsel for the parties fully argued the matter prior to argument on the merits. We reserved ruling on the motion then and proceeded with argument on the merits.

Three principal questions are to be determined by us, i.e., (1) should we grant the appellants' motion to strike; (2) in a wrongful death case, must the trial court upon request of the defendant instruct the jury that damages to the plaintiff must be reduced to present value; and, (3) assuming for the argument that such an instruction must be given, did the trial court in the present case substantially cover the necessary instruction in the instructions given so that there was no prejudicial error?

Shortly after 1:00 P.M. on July 28, 1967, Mrs. Dorothy A. Walston entered a taxicab owned by the appellee, Sun Cab, and operated by Curtis Lee Ash, on Edmondson Avenue in Baltimore City. The cab headed east. Approximately 300 feet east of Hilton Street, at a point where

---

1. In regard to references by Sun Cab in its brief to an affidavit of John Winkler, or to material from this affidavit, the appellants urged as an additional ground for striking those references that the affidavit was not part of the record in the trial court and the Court of Special Appeals by its order of December 23, 1971, declined to make it part of the record in the case before it. In view of our granting of the motion to strike on the principal ground urged by the appellants, we do not find it necessary to pass upon the second ground in regard to the Winkler affidavit.

a raised concrete median strip divided Edmondson Avenue, to separate eastbound and westbound traffic, the cab crossed the median strip and struck a westbound truck, operated by its owner, Wilton Ernest Moore. Mr. Moore's son, James, was a passenger in his father's truck.

Mrs. Walston was killed; Mr. Ash, Mr. Moore and his son, James, were injured.

Judge Jerrold V. Powers, for the Court of Special Appeals, described the proceedings in the trial court as follows:

> "Suit claiming damages for wrongful death was filed against Sun Cab and Ash by Richard B. Walston, surviving husband of Dorothy Walston, and by her six children, whose ages at the time of her death ranged from just under three to not quite twelve. A claim by Mr. Walston as Administrator was included. Mr. Moore and his son in separate cases sued Sun Cab and Ash. In the son's case, Mr. Moore was next friend, and individually asserted his derivative claim. Mr. Ash, with leave of court, sued the Commissioner of Motor Vehicles, and by later amendment, added the Unsatisfied Claim and Judgment Fund Board, as stand-ins for an unidentified driver of another vehicle alleged to have been involved.

> "The four cases were consolidated, and tried before a jury and Judge Joseph C. Howard in the Superior Court of Baltimore City. Trial began on February 9, 1971, and was concluded with the jury's verdicts on February 23, 1971. In the suit of the Walstons against Sun Cab and Ash the verdict was for the plaintiffs. Damages were assessed in favor of the Administrator at $1,000.00; in favor of the surviving husband at $125,000.00; and in favor of the six children at $100,000.00 each. In the suit of Ash

against the Unsatisfied Claim and Judgment Fund Board the verdict was for the defendant. In the suit of Wilton E. Moore against Sun Cab and Ash the verdict was for the plaintiff and damages were assessed at $14,500.00. In the suit of James Moore against Sun Cab and Ash the verdict was for the Plaintiffs. Damages were assessed at $1,500.00 for James Moore, and at $205.00 for his father's derivative claim." 15 Md. App. at 119-20; 289 A. 2d at 809.

The Court of Special Appeals affirmed the judgments in favor of Richard B. Walston, Administrator, the Unsatisfied Claim and Judgment Fund Board, Mr. Moore and his son, James. It affirmed the judgment in the wrongful death claim of the surviving members of Mrs. Walston's family, *as to liability,* but reversed it in regard to damages because of error in the instructions of the trial court and remanded that portion of the case to the trial court for a new trial on the question of damages. It ruled in favor of the appellants here on the other points (approximately 20) raised by Sun Cab before the Court of Special Appeals.

As we have indicated, the appellants here filed a petition for certiorari limited to the one matter decided adversely to them by the Court of Special Appeals, presenting four legal questions relating to that one matter for review. We granted that petition on June 29, 1972, and in accordance with our practice, docketed the case as No. 121 on our Appellate Docket in the September, 1972 Term, designating "Richard B. Walston, etc., et al." as "Appellants" and Sun Cab Company, Inc., as "Appellee." Sun Cab filed no cross-petition for certiorari, and yet, in its brief filed in the present case before us, argued at least four questions decided adversely to it by the Court of Special Appeals. The motion to strike those portions of the Sun Cab brief in regard to those points was then filed as we have indicated.

**(1)**

We have concluded that the appellants' motion to strike should be granted, so that we will not consider the questions decided adversely to Sun Cab by the Court of Special Appeals, they not being the subject of any cross-petition for certiorari filed by Sun Cab.

We have held many times that an appellee who does not file a cross-appeal cannot urge before us matters not within or related to the issues raised by an appellant. Even if a judgment or decree is prejudicial to an appellee, such prejudice will be disregarded by this Court if there was no cross-appeal filed by the appellee. Moreover, such appellee cannot obtain any[q] affirmative relief by way of reversal, amendment or modification of the judgment or decree under review in this Court. *See, e.g., Temple Hill Baptist Church v. Dodson,* 259 Md. 515, 521, 270 A. 2d 802, 806 (1970) ; *Glen Alden Corp. v. Duvall,* 240 Md. 405, 421, 215 A. 2d 155, 167 (1965) and prior Maryland cases cited in that opinion. *See also Fennell v. G.A.C. Finance Corp.,* 242 Md. 209, 229, 218 A. 2d 492, 502-503 (1966).

The question presented here is whether the same rule in regard to appeals as of right applies to cases coming to this Court by way of the exercise of its discretion in granting writs of certiorari to lower courts, principally the Court of Special Appeals. We have concluded that the same rule does apply.

The constitutional amendment adding Section 14A to Article IV of the Maryland Constitution, Chap. 10 of the Laws of 1966, ratified by the electorate on November 8, 1966, was a general grant of power to the General Assembly to create by law "such intermediate courts of appeal, as may be necessary" and to "prescribe the intermediate appellate jurisdiction of these courts of appeal, and all other powers necessary for the operation of such courts." The immediate purpose of this constitutional amendment was to enable the General Assembly to

relieve this Court of the substantial increase of criminal appeals which had inundated the Court and yet provide at least one appeal as of right, either to this Court or to an intermediate court to be created by statute. There was also an underlying general purpose to provide sufficient flexibility in the grant of power by the constitutional amendment to provide for a grant of appellate power to the intermediate appellate court or courts to be created over certain—or perhaps ultimately all—civil cases.[2] Chapter 11, § 1 of the Laws of 1966 created the Court of Special Appeals, Code (1957, 1966 Repl. Vol.) Art. 26, § 130, and defined its appellate jurisdiction in criminal cases where the sentence was other than death, "subject in each such case to a *further appeal* to the Court of Appeals as provided by § 21A of Article 5 of this Code . . . ." (Emphasis supplied) Chapter 12, § 1 of the Laws of 1966, Code (1957, 1968 Repl. Vol.) Art. 5, § 21A, originally a companion bill to Chap. 11 of the Acts of 1966, provided that in the cases subject to the jurisdiction of the Court of Special Appeals if it appeared "upon petition of any party, . . . that a review is desirable and in the public interest, [this Court] shall require, by certiorari or otherwise, any such case to be certified to the Court of Appeals for its review and determination . . . ."[3]

Reading this statutory material together, it is clear to us that the General Assembly intended to give an appeal, *as of right,* in cases within the appellate jurisdiction of the Court of Special Appeals and a "further appeal" by our exercise of *discretion* in granting writs of certiorari when review and determination by us appear to be "desirable and in the public interest."

2. The General Assembly, by Chap. 99 of the Laws of 1970, effective July 1, 1970, did expand the jurisdiction of the Court of Special Appeals to include appeals in certain areas of civil jurisdiction.

3. Chapter 99 of the Laws of 1970 rearranging the provisions in regard to the appellate jurisdiction of the Court of Special Appeals and broadening its appellate powers does not indicate any change in the intention of the General Assembly that the certiorari procedure to this Court results in a "further appeal."

This legislative intent is supported by (a) such legislative history of the legislation that is available, (b) by our certiorari practice, (c) by analogy to the certiorari practice in the Supreme Court of the United States, and (d) by a sound concept of public policy.

(a)

The constitutional amendment and implementing legislation was largely conceived and originally promoted by the Maryland State Bar Association. We note that the earliest reference to certiorari jurisdiction was in 1959 in which the Committee of the Maryland State Bar Association, appointed to consider the matter, referred to certiorari jurisdiction to relieve the case load of this Court as "abolishing the *absolute right of appeal* and substituting *permissive appeal* . . . ." 64 Transactions, Maryland State Bar Association at 398 (1959). (Emphasis supplied) Later, the State Bar Committee reconsidered the whole subject and on June 24, 1965, recommended the creation of the Court of Special Appeals limited originally to appellate jurisdiction in criminal (other than death cases), post-conviction and defective delinquency cases. The Committee's basic premise was that "a litigant is entitled to at least *one appeal as a matter of right* in each case and where this appeal was to the Court of Special Appeals, a petition for a writ of certiorari could be filed to the Court of Appeals by the *litigant adversely affected* whether it be the accused or the State." (Emphasis supplied) This Report was unanimously adopted by the Maryland State Bar Association, 70 Maryland State Bar Association at 134 (1965). This Committee Report was submitted to the Legislative Council of the State of Maryland, which reported to the General Assembly of 1966, pages 219-20 of the Legislative Council Minutes, as follows:

"(1) Constitutional amendment authorizing the General Assembly by law to create an intermediate court, to specify its jurisdiction,

number of judges and all other necessary details.

"(2) Statute generally following the plan recommended by the Case Committee to the Maryland State Bar Association for a five judge court sitting in Annapolis to hear criminal cases on appeal. A *further right of appeal* to the Court of Appeals is allowed on certiorari."
(Emphasis supplied)

In regard to the two bills which the Legislative Council had completed when it submitted its Report to the General Assembly of 1966, the Legislative Council stated at 51 of its Report:

"Some of the details necessary for the operation of the new court were not considered by the Council and will be placed in a third bill. This bill would create a clerk for the Court of Special Appeals, permit *appeal* to the Court of Appeals by *writ of certiorari* only and fix the salaries and pensions of the new judges."
(Emphasis supplied)

It thus appears that the General Assembly intended that the certiorari procedure was to provide for a discretionary *appeal*.

### (b)

We have so interpreted the legislation by our uniform practice in regard to the certiorari procedure. When we grant a petition for a writ of certiorari, the case is transferred from the Miscellaneous Docket to the Appellate Docket, the petitioner being designated as the "Appellant" and the respondent as the "Appellee." It receives a number for appeals in the September Term involved and is treated on the Appellate docket like any other appeal. In short, we have treated the procedure as affording a discretionary appeal; and when the discretion

to grant the petition is exercised, the case is treated like every other *appeal.*

It should also be observed that in Maryland Rule 811, entitled "How *Appeal* to Be Taken" (Emphasis supplied), paragraph a provides for the taking of an appeal *"By Filing Order"* and paragraph b "by *Petition for Certiorari."* Thus the two methods of taking an appeal— one as of right by filing an order for appeal, the other— by filing a petition for certiorari addressed to our discretion—are consistent with the intention of the General Assembly in this regard which we have already discussed.

### (c)

Our practice in regard to the certiorari procedure closely follows the certiorari practice of the Supreme Court of the United States. Robertson and Kirkham, *Jurisdiction of the Supreme Court of the United States* (Wolfson and Kurland ed. 1951) summarizes the Supreme Court practice in regard to cross-petitions for certiorari in § 428, pages 860-62, as follows (footnotes omitted) :

"In the absence of a cross petition respondent is not entitled to be heard in opposition to the parts of the decision below which were adverse to him, the general rule applied by the Supreme Court being that consideration of the case will be confined to an examination of errors asserted by petitioner where respondent has failed to present a cross petition for certiorari. The court has stated, however, in a careful and well reasoned dictum that these decisions simply announce a rule of practice which generally has been followed, without denying the power of the Court to review objections urged by respondent to the decree below, although he has not applied for certiorari, if the Court deems there

is good reason to do so. This power, however, is not exercised."

### (d)

The creation of the Court of Special Appeals and the establishment of the certiorari procedure were designed to decrease the work of this Court and its then expanding case load. There was no intention to give to cases in which certiorari was granted a *larger and more extensive scope* than that afforded other appellate cases, thus frustrating the principal policy underlying the legislation.

Then, too, it would be incongruous and inconvenient to have two different Rules in regard to the scope of our appellate consideration in cases which, as we have stated, we treat identically when certiorari is granted.

It should also be kept in mind that the statute contemplated that the desirability and public interest involved in granting certiorari are shown to us by petition and the matters presented to us by petition should logically be those considered by us unless we limit those matters for consideration in our order granting certiorari. In sum, except in most extraordinary circumstances, we will consider on an appeal resulting from a grant of a writ of certiorari only those questions raised in the petition and matters relevant to those questions, in the absence of a cross-petition raising additional questions, unless, of course, we have limited in our order granting certiorari the issues to be considered on that appeal.

### (2) and (3)

The questions regarding the failure of the trial court to give an instruction in regard to present value of any future earnings of the decedent are interrelated and may conveniently be considered together.

In regard to damages which might be recovered by the surviving husband and six surviving children, the trial court instructed the jury as follows:

"You are instructed that if you find for the plaintiffs, Richard Walston, surviving husband, and the six surviving children of Dorothy Walston, deceased, then in establishing damages you are to consider the reasonable possibilities of the life of the deceased if she had not been killed, and allow her husband and children such past and prospective losses as you find they suffered as a direct consequence of her death.

"If you should find a verdict in favor of the surviving husband, Richard Walston, then you are instructed that he is entitled to the pecuniary loss, both past and prospective, that he has suffered as a result of the death of his wife.

"In estimating his damages you may consider his age and health, his condition in life, the joint life expectancy of this plaintiff and his wife, and the reasonable value of her services and financial contributions, which he would have received from the decedent had she lived. You are further instructed that if you find your verdict in favor of the six infant plaintiffs surviving the deceased, Dorothy Walston, then each child is entitled to the pecuniary loss, both past and prospective, that he or she has sustained as a result of the death of their mother.

"In estimating the damages suffered by each, you may consider their respective ages and conditions in life, and what they could have reasonably expected to receive from their deceased mother for their support, maintenance and education up to the time of their reaching their majority.

"Further, you may consider the loss of comfort and position in society, which these children would have enjoyed, if their mother would have lived and retained her income.

"Now, after considering the elements, as set out for each plaintiff, in each of the consolidated cases, you should allow only such damages which will fairly and justly compensate each plaintiff for the injuries, losses, and disability which he or she has sustained as a result of the accident."

Among a number of exceptions to the trial court's charge, counsel for Sun Cab noted the following exception:

"[T]here is a point I think was omitted and I don't know, I think it's a valid exception as it then follows the point that you are instructing on. As a matter of law, you must then reduce that amount to its present value based upon a discount factor to be determined by you.

"THE COURT: I don't like the inference involved in it.

"MR. SWERDLOFF: I only submit that it is the law.

"THE COURT: I submit that it is not required."

In our opinion, the exception, although somewhat sketchy, was sufficient to raise the question before the Court of Special Appeals and before us in regard to the trial court's refusal to instruct the jury in regard to the present value of future earnings of the deceased.

The question of the propriety or of the necessity of instructing a jury concerning the present value of future earnings in personal injury cases and in cases seeking recovery for wrongful death has been considered in many cases and by the text writers.

For a general discussion of this question, *see* McCormick, *Damages,* § 86 at 222, § 96 at 341. In regard to present value, McCormick says:

"The jury should always be instructed, in making awards for loss of future earning power or other future damages, to give only the 'present worth or value' of the future losses, or 'such sum as, if paid now' will compensate for them."

\* \* \*

"The theory that damages for loss of future income must be discounted because of payment in advance is . . . frequently applied in death cases."
*Id.* at 304 n. 23, 341 n. 30.

This measure of damages in wrongful death cases was recognized by the Supreme Court of the United States long ago in *Chesapeake & Ohio Railway v. Kelly,* 241 U. S. 485, 489, 36 S. Ct. 630, 631-32, 60 L. Ed. 1117, 1122 (1916):

"The damages should be equivalent to compensation for the deprivation of the reasonable expectation of pecuniary benefits that would have resulted from the continued life of the deceased. [cases omitted] So far as a verdict is based upon the deprivation of future benefits, it will afford more than compensation if it be made up by aggregating the benefits without taking account of the earning power of the money that is presently to be awarded. It is self-evident that a given sum of money in hand is worth more than the like sum of money payable in the future."

Most jurisdictions have followed this reasoning. *See, e.g., Haddigan v. Harkins,* 441 F. 2d 844 (3rd Cir. 1970); *Cox v. Northwest Airlines,* 379 F. 2d 893 (7th Cir. 1967); *Har-Pen Truck Lines, Inc. v. Mills,* 378 F. 2d 705 (5th Cir. 1967); *Gill v. United States,* 285 F. Supp. 253 (E. D. Tex. 1968); *Carr v. Pacific Tel. Co.,* 26 Cal. App. 3d 537, 103 Cal. Rptr. 120 (1972); *Matthews v. Nelson,* 57

N. J. Super. 515, 155 A. 2d 111 (1959) ; *Brodie v. Philadelphia Transportation Co.,* 415 Pa. 296, 203 A. 2d 657 (1964) ; *Jenkins v. Pennsylvania,* 220 Pa. Super. 455, 289 A. 2d 166 (1972). Although some courts do not reduce damages to present value in an attempt to offset inflation and include future wage increases, *see, e.g., Beaulieu v. Elliott,* 434 P. 2d 665 (Alaska 1967) ; *Leavitt v. Gillaspie,* 443 P. 2d 61 (Alaska 1968) (Dictum), this approach has been criticized as being too "speculative" for a jury's consideration. *Hampton v. State Highway Commission,* 209 Kan. 565, 498 P. 2d 236, 254 (1972) (Schroeder, J. dissenting). *See also* 22 Am.Jur.2d *Damages* § 96 (1965).

Although this Court has not ruled on the issue of present value in wrongful death cases, we have made oblique reference to this theory in personal injury cases. In *Hutzell v. Boyer,* 252 Md. 227, 237-38, 249 A. 2d 449, 454-55 (1969), a personal injury case, Judge Finan, for the Court, said:

> "The appellant cites as error the trial court's refusal to grant a motion requiring the determination of the present value of the appellee's damages for future medical care, loss of wages and earning capacity. The trial court in its memorandum on the motion for judgment *n.o.v.* stated, 'there was no instruction proffered in this regard, so it is impossible to be in error for refusing an instruction that was not requested.' However, we do note that the record contains a prayer requested by the appellant in which he asked the court to instruct the jury that the measure of damages should not be the difference between the plaintiff's probable earnings before and after the injury, but the reasonable present value of the reduction of his earning capacity. The plaintiff offered no evidence, nor proffered any formula as to how the present value may be estimated, as was done

in *Baltimore Transit Company v. Worth*, 188 Md. 119, 142, 52 A. 2d 249 (1947). However, assuming that the proper request for an instruction was made, we do not think the lower court's refusal to grant such an instruction, if error at all, was prejudicial error. To be certain, this Court has approved the reduction of damages to present value, *Baltimore Transit Company v. Worth, supra; Scott v. James Gibbons Co.*, 192 Md. 319, 331, 64 A. 2d 117 (1947) ; *Sherley v. Sherley*, 118 Md. 1, 26-27, 84 A. 160 (1912), to mention but a few cases and in *U. S. v. Guyer*, 218 F. 2d 266, 268 (4th Cir. 1954) the District Court said that, 'Under the law of Maryland the measure of recovery for wrongful death * * * is the present value of the pecuniary benefit which the [survivors] might reasonably have expected to receive from [the deceased] if he had not been killed.' This principle was. also followed by the federal court in *Jennings v. U. S.*, 178 F. Supp. 516 (D. C. Md. 1959), a death case wherein Judge Watkins set forth in detail the procedure to be followed in establishing the present value of damages. However, reduction of damages to present value *is not customary in Maryland, except in cases of wrongful death*, as is evident from the decision of this Court in *Adams v. Benson*, 208 Md. 261 (1955). In the instant case the trial court in rendering its instructions concerning damages followed, almost verbatim, the language found in *Adams v. Benson* * * *."

(Emphasis supplied)

The Court of Special Appeals, in commenting upon this quotation from *Hutzell*, aptly stated:

"However, characterization of the rule as *customary* in wrongful death cases does not mean

that it is any less the law in such cases, nor that a judge may properly decline to instruct a jury upon it when such instruction is requested." (Emphasis in the original opinion) "* * * The judge said that such an additional instruction was not required.

"We hold that it was required, and that failure to give it was reversible error."

We affirm that holding.

In the opinion of the Court of Special Appeals, the prior Maryland cases are carefully and fully reviewed. We adopt that analysis and do not find it necessary to repeat it here. *See* 15 Md. App. 121-29, 289 A. 2d 809-13. Also, we do not find it necessary to elaborate further upon our prior cases in regard to present worth in personal injury cases more than has been done in the opinion of the Court of Special Appeals. We confine our holding, affirming that Court, to the failure of the trial court to give an additional instruction in regard to present worth in the present death case.

> *Appellants' motion of September 21, 1972, to strike portions of the brief of the appellee, Sun Cab Company, Inc., granted; judgment in favor of Richard B. Walston, Tanya Rene Walston, Sharon Rochelle Walston, Ricky Andre W a l s t o n, Terry Walston, Donna Walston and K i m b e r l y Walston against Sun Cab Company, Inc., and Curtis Lee Ash, affirmed as to liability, but reversed in part and remanded to the Court of Special Appeals for fur-*

*ther remand to the Superior Court of Baltimore City for a new trial on the question of damages, the Sun Cab Company, Inc., to pay three-fourths of the costs of the transcript, its brief and the brief of Richard B. Walston, Etc., et al., and all of the costs of the brief of Wilson E. Moore et al., and all of any other costs in the Court of Special Appeals, as ordered by that Court; the costs in the Court of Appeals to be divided equally between the parties in this Court so that Richard B. Walston, Etc., et al., appellants in this Court, will pay one-half of such costs in this Court and the remaining one-half of such costs in this Court will be paid by the appellee, Sun Cab Company, Inc.*