501 A.2d 856

**Ernest McCRAY**

v.

**STATE of Maryland.**

**No. 31, Sept. Term, 1985.**

Court of Appeals of Maryland.

Dec. 24, 1985.

Sherrie B. Glasser, Asst. Public Defender (Alan H. Murrell, Public Defender, on brief), Baltimore, for appellant.

Valerie J. Smith, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., on brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ.

COUCH, Judge.

We granted certiorari in this case to consider whether the trial court erred in refusing to allow a proffered defense witness to testify in his behalf on the basis of a violation of the sequestration rule [1] when there was no request for sequestration nor any such order. Under the facts and circumstances present we hold the trial judge did err.

Ernest McCray was charged with, *inter alia*, second degree rape and child abuse. He was tried in the Circuit Court for Baltimore City and convicted of these two charges. Upon appeal to the Court of Special Appeals that court affirmed the judgements; we issued certiorari to review that decision.

During the trial the State produced, in rebuttal, the thirteen year old victim, who on cross examination denied that in visiting the defendant [2] in jail awaiting trial, she told him she was going to drop the charges. The defendant, in his direct examination, had testified that she had so told him on her visit to the jail. The victim also denied that she told anyone else that she was going to drop the charges although, during the State's case in chief, she, in answer to a question from the trial judge, stated that in a phone conversation with the defendant he had asked her "Was I going to let him go free and I told him yes. I told him yes. And I told him that he has to tell me something first before I go

---

1. See present Md.Rule 2–513.

2. The defendant was referred to as the victim's stepfather.

to Court. And I asked him, I said did you do that to me? He said yes."

Thereafter defense counsel, in a bench conference, advised the trial judge he had "to ask some surrebuttal;" that the defendant's sister, who had been sitting in the courtroom during the trial, was prepared to testify she was at the jail when the victim told the defendant she was going to drop the charges. Thereafter the following colloquy took place:

"MR. WOOD [State's Attorney]: I believe she is in the courtroom.

MR. CAPLAN [Defense Attorney]: This is something I didn't anticipate. You're the one who brought up the question.

THE COURT: You brought it out. He didn't bring it out. Your client brought it out.

MR. WOOD: It was implied in the defense counsel's question.

MR. CAPLAN: No. Well, irrespective, in view of cross examination I am entitled to rebut what she said.

THE COURT: Well, why wouldn't you have told us about that so that—

MR. CAPLAN: I had no idea she would deny it, why she would go over there.

THE COURT: You brought out for the first time that the victim had been to the Baltimore City Jail and she had said that she was going to drop the charges. You brought that out.

MR. CAPLAN: Right.

THE COURT: It surely is not unreasonable to assume that the victim was going to deny that. And yet, you knew that the sister was in the courtroom and you could reasonably anticipate putting her on to rebut what the sister said.

MR. CAPLAN: That's not true. I didn't know about the visit to the City Jail until the case was in the middle of it.

Secondly, I did not know she made mention to the sister.

THE COURT: Well, you brought this out when you were directly examining your client.

MR. CAPLAN: I didn't know she was going to deny the statement.

THE COURT: Did you think she would admit it?

MR. CAPLAN: I thought that's what she went over there for.

THE COURT: Simply because your client said—

MR. CAPLAN: No. Why would the girl go over there? Would you think that a girl would go over there and say I'm going to prosecute you? It's always the other way around. And I assume that's what it's going to be.

THE COURT: Why would you think the victim went over there simply because your client said she did?

MR. CAPLAN: Why would he lie about it? I could get the record—

THE COURT: Do you want to know why people lie? I don't have enough time to answer that question.

Just a minute. Let's stop sparring. The point of it is you knew you were going to elicit testimony from your client that the victim visited him at the jail. You knew that the victim either was going to say yes, I did, and you knew further that the victim if she took the stand might well have denied that she had ever said she was going to drop the charges. So, you should have apprised this Court of that so we could understand whether the aunt or whoever it was, the sister was going to be a witness in this case. Now, having said that—

MR. CAPLAN: Your Honor, if I might interrupt.

THE COURT: Why should you interrupt? Having said that, the whole purpose of the sequestration rule is so that some person cannot hear what someone else is saying.

MR. CAPLAN: There was no motion that I recall.

MR. WOOD: There was no motion to sequester in this case because the defense said they had no witnesses at all in this case. Why should I make a motion to sequester if we have no witnesses?

THE COURT: Well, Mr. Caplan should have told this Court that the Defendant was going to say that the victim visited him in jail and that the victim said I'm going to drop the charges. And thus afforded the adversary an opportunity to determine who the adversary the State was going to put on the victim to deny these things. Whether the State would or wouldn't have, it would have been preferable obviously to not have the sister of the Defendant in the Court during this critical testimony. Because Mr. Caplan specifically asked the Defendant on direct examination, is it true that there were other people present. And he elicited the answer that the sister was present. Now, right then and there Mr. Caplan knew that the sister was sitting in the very courtroom when that question was asked. Why did you not at that time as an officer of the Court say, Judge, I want to alert you to this and the sister shouldn't be in this courtroom?

MR. CAPLAN: I should not as an officer of the Court—

THE COURT: You should not?

MR. CAPLAN: In the interest of my client, I'm to protect his interest at all times. It does not call for me to tell you what I proffer as to—

THE COURT: Why should I not permit her testimony?

MR. CAPLAN: Because surrebuttal is in the discretion of the Court. I feel you would be abusing your discretion by not permitting me to put her on.

THE COURT: Even though you sandbagged this Court?

MR. CAPLAN: I didn't sandbag the Court. Have no reason to alert the Court and State's Attorney as to what my possible defenses or testimony are. There's no motion in the discovery for discovery from the State except as to alibi witnesses. That is not the situation in this

case. At no time do I have to make a proffer as to what my proffer might be.

THE COURT: You're correct. You don't have to make a proffer. When you get to the point where you know you're going to be asking this man whether what he said was truthful because someone else was present at that time and you knew he was going to say the sister was present and you also knew the sister was in the court-room. That creates a situation where when you now want to put her on you've done something in my view-point that's somewhat questionable. Now, the question is whether to let her testify or not. I have these options: I can say no, she can't testify; or I can say no, she can't testify and the State cannot allude to that in its closing argument; or I can let her testify. If she does testify, she had the advantage of having heard everything that the Defendant has said and can pattern her testimony after his. Whereas had she not been in the courtroom, then she would have been just another witness to be cross examined not knowing precisely what the brother had testified to.

Ma'am, would you come up, please? This lady. Thank you.

What is your name?

MS. TAYLOR: Fanny May Taylor.

THE COURT: You're the sister of the Defendant?

MS. TAYLOR: Yes.

THE COURT: Now, were you present at the time?

MS. TAYLOR: Yes.

THE COURT: Did you talk to Mr. Caplan about that?

MS. TAYLOR: Yes. I told him when I called him on the phone.

THE COURT: When did you call him on the phone?

MS. TAYLOR: That Sunday.

THE COURT: How long before today did you call, a week ago?

MS. TAYLOR: I'd say almost—Eleaisha, she went almost two weeks before Thanksgiving.

THE COURT: And you told Mr. Caplan you were at the jail?

MS. TAYLOR: Yes. He came that Saturday.

THE COURT: And that's when she said what?

MS. TAYLOR: I told Mr. Caplan she said she's going to drop the charges and she asked me could she go to Baltimore City Jail with me. Nothing else, could she go with me.

MR. CAPLAN: Let me ask you something: Did you tell me that she was over the City Jail with you when she said she was going to drop the charges?

MS. TAYLOR: Yes. We went there together. I told you that.

MR. CAPLAN: When did you call me?

MS. TAYLOR: Sunday night.

MR. CAPLAN: What did you say?

MS. TAYLOR: I told you Eleaisha said she was going to drop the charges.

MR. CAPLAN: Isn't that exactly what you said?

MS. TAYLOR: Yes.

THE COURT: Sit down, ma'am, please.

I sustain the State's objection and she will not testify. And I feel you misled this Court intentionally. You contended three minutes you knew nothing about it.

MR. CAPLAN: I still contend it. She said one time over the phone. What I gathered is a different story.

THE COURT: I order the State not to talk about that."

The right of a defendant in a criminal trial to produce witnesses in his own behalf is a critical right, the implementation of which is guaranteed by Article 21, Maryland Declaration of Rights, and the Sixth Amendment to the United States Constitution. We recognize, of course, that trial judges have broad discretion in the conduct of trials in such areas as the reception of evidence, *see Fleming v. Prince George's County*, 277 Md. 655, 358 A.2d 892 (1976);

*Telak v. Maszczenski*, 248 Md. 476, 237 A.2d 434 (1968), and order of proof, *see State v. Hepple*, 279 Md. 265, 368 A.2d 445 (1977); *Snowhite v. State, Use of Tenant*, 243 Md. 291, 221 A.2d 342 (1966). Prior to the adoption of the exclusion rule it was within the discretion of the trial court whether to exclude a witness, although abuse of discretion was reversible error. *See Gwaltney v. Morris*, 237 Md. 173, 205 A.2d 266 (1964), and cases cited therein; *Brown v. State*, 272 Md. 450, 325 A.2d 557 (1974). Since the adoption of former Rules 536 and 755, now Md.Rule 2–513, however, it has been held that the rule is now obligatory and no longer discretionary. *Gwaltney*, 237 Md. at 176, 205 A.2d 266. Furthermore, it has been stated by our predecessors:

> "As stated in *Frazier v. Waterman S.S. Corp.*, 206 Md. 434, 446, 112 A.2d 221 [ (1955) ], ' "The ascertainment of the truth is the great end and object of all the proceedings in a judicial trial," we think that the complete exclusion of the testimony of witnesses for a violation of the sequestration rule is not lightly to be imposed as a penalty upon even an offending party.' " *Id.* at 176, 205 A.2d 266.

It is clear that the rule contemplates an order of sequestration before any sanction for a violation of the rule may be applied. Section (c) of the rule specifically provides for exclusion of all or part of the testimony of the witness who receives information in violation of an order under the rule. Obviously since the matter is no longer discretionary with the trial court, and there must be an order of sequestration before exclusion may occur, it follows that in the absence of such an order, as here, exclusion of the witness was error.

■ The State nevertheless argues that the witness in this case was excluded not because of a sequestration rule violation, but because the testimony of the witness was not proper surrebuttal. It is also argued that the admission of the witness was within the court's discretion. The defendant contends at oral argument, rightfully so, that this was not raised in the trial court, nor by cross petition for certiorari, and therefore we should not address it.

We disagree with the State's contention that the witness was not excluded because of a violation of the sequestration rule. In our view, a fair reading of the trial judge's comments, as set forth above, clearly leads to the conclusion that he excluded the witness because he felt the court, and the State, had been "sandbagged" and the witness privy to the in-court testimony.

It is also clear that the issue whether the proffered testimony was proper surrebuttal was not raised before the trial court nor did the court use improper surrebuttal as a ground for excluding the witness. Our reading of the record persuades us the exclusion was based solely on a violation of the sequestration rule.

The State urges, however, that on the basis of *Robeson v. State,* 285 Md. 498, 403 A.2d 1221 (1979), *cert. denied,* 444 U.S. 1021, 100 S.Ct. 680, 62 L.Ed.2d 654 (1980), we can affirm under the exception to the usual rule that an appellate court will not ordinarily consider an issue that has not previously been raised, where the record adequately demonstrates that the decision of the trial court was correct although on a ground not relied on by the trial court. We believe the State's reliance on *Robeson* to be misplaced as that case is distinguishable on its facts. In *Robeson,* on his appeal to the Court of Special Appeals, the defendant argued, *inter alia,* that he had a Fifth Amendment right to pre-arrest silence, and the admission of testimony demonstrating such silence over his objection was in violation of that constitutional right. Judge Eldridge, in writing for this Court, stated:

"The defendant petitioned this Court for a writ of certiorari, raising solely the question of whether the trial court erred in admitting evidence of his pre-arrest silence. The State filed an answer and conditional cross-petition for a writ of certiorari, arguing that certiorari should be denied because the testimony was clearly admissible and, even if not admissible, the error was harmless. The State requested that, if the defendant's petition were granted, we should grant the State's conditional cross-petition to

consider the harmless error question." 285 Md. at 501, 403 A.2d 1221.

\* \* \* \* \* \*

"The principle that a court exercising discretionary certiorari jurisdiction will ordinarily consider only those issues presented in the certiorari petition, a cross-petition or the court's order granting certiorari, is based upon the nature of such discretionary jurisdiction. As observed in *Walston v. Sun Cab Co.*, *supra*, 267 Md. [559] at 569 [298 A.2d 391 (1973)], 'the statute [delineating this Court's certiorari jurisdiction] contemplated that the desirability and public interest involved in granting certiorari are shown to us by petition and the matters presented to us by petition should logically be those considered by us unless we limit those matters for consideration in our order granting certiorari.' However, as further pointed out in *Walston, id.* at 567–568 [298 A.2d 391]: 'In short, we have treated the [certiorari] procedure as affording a discretionary appeal; and when the discretion to grant the petition is exercised, the case is treated like every other *appeal.*' Since the State presented the harmless error issue to us in a cross-petition, and as we exercised our discretion to grant the cross-petition, with regard to that issue 'the case is treated like every other *appeal.*' And, as in every ordinary direct appeal, the rule is well established that an appellate court will normally affirm a trial court on a ground adequately shown by the record, even though that ground was not the one relied upon by the trial court." 285 Md. at 503–04, 403 A.2d 1221.

Thus it is clear that factors were present in *Robeson* that are not present here. In this case there was no conditional cross-petition filed raising the surrebuttal issue, and the question raised in the defendant's petition did not encompass the issue now sought to be raised by the State.

Finally we note that Rule 813 a provides that this Court will ordinarily consider only the issues which have been raised in the petition and any cross-petition for certiorari which have been preserved for appellate review, unless

otherwise provided by the order granting the writ of certiorari; the order here has no such provision.

Accordingly, we do not address whether the proffered testimony was proper surrebuttal. *See Coleman v. State,* 281 Md. 538, 380 A.2d 49 (1977). Furthermore, we hold that the trial court had no discretion with respect to whether to exclude the witness for violation of a non-existent sequestration order; thus the trial judge erred.

JUDGMENT OF COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTION TO REVERSE THE JUDGMENTS OF THE TRIAL COURT AND REMAND TO THAT COURT FOR A NEW TRIAL. COSTS TO BE PAID BY THE MAYOR & CITY COUNCIL OF BALTIMORE.

RODOWSKY, Judge.

I concur in the result only.

McAULIFFE, Judge, dissenting.

I respectfully dissent. The testimony offered by McCray did not address new facts developed by the State's rebuttal witness, and it was therefore admissible only in the sound discretion of the trial judge. In the exercise of that discretion the judge properly considered the presence of the witness in the courtroom during all previous testimony bearing on the issue to which she would testify, and the decision to exclude the proffered evidence was not error.

I do not agree that Maryland Rule 813 a or our previous holding in *Robeson v. State,* 285 Md. 498, 403 A.2d 1221 (1979), *cert. denied,* 444 U.S. 1021, 100 S.Ct. 680, 62 L.Ed.2d 654 (1980), precludes us from considering the propriety of the proffered testimony as surrebuttal. The question before us was framed by the petition for certiorari in the following words:

Can a trial judge exclude the testimony of a crucial defense witness on the basis of her presence in the

courtroom when no sequestration order was either requested or in effect at the time of trial?

The answer to the question depends upon whether the testimony was necessary and proper surrebuttal, and therefore admissible as a matter of right, or was not proper surrebuttal and thus admissible only in the discretion of the court. If the testimony was not proper surrebuttal the trial judge could properly consider the presence of the witness in the courtroom as a factor in the exercise of his discretion. Whether the proffered testimony was proper surrebuttal is therefore a question inexorably intertwined with the question presented for review.

A basic rule relating to rebuttal evidence is that "evidence which ought to be offered in chief will be rejected when offered as rebutting testimony." *Davis v. Hamblin,* 51 Md. 525, 539 (1879). In 2 J. Poe, *Pleading & Practice at Law,* Pr. § 287 (4th ed. 1969) the rule is well stated:

The rule is that the plaintiff will be required to go fully into his own case-in-chief on these issues as to which he holds the substantial affirmative, and where, therefore, the burden of proof rests on him; and hence, in reply to the case made by the defendant, he will ordinarily be limited to what is strictly rebutting evidence. Still, it is not always easy to draw the line between what is rebutting evidence and what is evidence properly adducible in chief. The subject is one which is addressed to the sound discretion of the court; and the appellate court will not reverse for an error on this point, unless the ruling of the court below was both manifestly wrong and substantially injurious. Indeed, as a general rule, in such cases no appeal will lie.... Trials would be greatly prolonged and great surprise and injustice would result if the practice in regards to rebutting evidence was not enforced; and hence, except where departures from the rule seem to be justified by the requirements of particular cases, the courts will not permit evidence to be offered in rebuttal, unless it is really in answer to something which was not properly part of the case-in-chief. If it is testimony

merely cumulative to, or corroborative of, that already offered in chief, it will be rejected. (Footnotes omitted.) *See also Huffington v. State,* 295 Md. 1, 13–15, 452 A.2d 1211 (1982); *State v. Hepple,* 279 Md. 265, 270, 368 A.2d 445 (1977); *Snowhite v. State, Use of Tennant,* 243 Md. 291, 306, 221 A.2d 342 (1966); *Snowden v. State,* 133 Md. 624, 636, 106 A. 5 (1919).

A determination of whether the proffered testimony was proper rebuttal evidence requires consideration of its nature and the purpose for which it was offered. During the State's case-in-chief the prosecutrix testified fully concerning the alleged offenses. McCray's counsel cross-examined her at length, but did not ask her whether she had ever told McCray or anyone else that she intended to have the charges dropped. The first mention of that came during the presentation of McCray's case-in-chief, when he testified the prosecutrix had visited him at the Baltimore City Jail approximately one and one-half weeks before trial, and told him she was "going to drop the charges" because "it's not true." On cross-examination McCray was asked whether anyone else was present at the time of the conversation and he testified that his sister, Fannie Mae Taylor, was there. The prosecutrix was recalled by the State, and testified in rebuttal that she had visited McCray at the jail about two weeks before trial, but that she had never told him she intended to have the charges dropped. On cross-examination she denied having told anyone else she was "going to drop the charges," and when asked whether she told that to McCray's sister, she said she had not. McCray's counsel then asked to call Taylor in surrebuttal, stating "the sister is here ... [to testify] that she made [an] admission ... that she was going over to the jail to tell him she was going to drop the charges." A proffer of Taylor's testimony was taken at the bench, and it appeared she would testify that: 1) The prosecutrix had called her and asked to go to the jail with her because she was "going to drop the charges," and

2) she had gone with the prosecutrix to visit McCray at the jail.[1]

The second part of Taylor's testimony concerning her presence at the jail and any conversation relating to the dropping of charges was not proper surrebuttal, and its exclusion was not error. When McCray testified in his case-in-chief, he intended to prove that the prosecutrix had come to the jail and stated her desire to drop the charges because the facts upon which they were based were not true. Taylor was available to corroborate that testimony, and should have been called as a corroborating witness during the defendant's presentation of his case if that was the purpose of her testimony. The rebuttal testimony of the prosecutrix introduced no new issue; she simply denied the facts advanced by McCray. A mere denial of facts already in evidence is an insufficient basis for the introduction of surrebuttal testimony.

The first part of Taylor's proffered testimony, dealing with the alleged telephone call, requires a more detailed analysis because it may have been offered under two distinct theories of admissibility: as a statement of intention offered to show a subsequent act, or as a prior inconsistent statement for purposes of impeachment.

In *Md. Paper Products Co. v. Judson*, 215 Md. 577, 590–91, 139 A.2d 219 (1958) this Court approved the rule that evidence of declarations of a plan, design or intention presently entertained by the declarant is, subject to the usual limitations as to remoteness in time and apparent sincerity common to all declarations of mental state, admissible when offered as evidence that the design was carried

---

1. McCray's attorney expressed surprise upon learning that Taylor would testify she was present at the jail at the time of the conversation. He stated he previously understood she would testify only as to a telephone call from the prosecutrix concerning her desire to visit McCray at the jail, and to drop the charges.

out by acts or omissions of the declarant.[2] If offered for this purpose, *i.e.*, to show that the prosecutrix probably did go to the jail and tell McCray she intended to have the charges dropped, it again is nothing more than substantive evidence to corroborate McCray's testimony to that effect. As such, it could have been introduced as a part of his case-in-chief, and it was not proper rebuttal.

If the testimony was offered for impeachment purposes as a prior inconsistent statement of the prosecutrix, a different situation is presented. Ordinarily, such evidence is properly offered as rebuttal because it is necessary first to elicit a denial or a claim of lack of memory of a statement from an opposing witness. In this case, an attempt was made to lay a foundation for impeachment, but the attempt fell short. This Court's previous decisions make it clear that in order to establish a proper foundation for impeachment by way of a prior contradictory statement the witness must be asked on cross-examination whether the particular statement was made to a designated person, and the witness must be apprised of the time and place when the statement was supposed to have been made. *State v. Kidd,* 281 Md. 32, 46 n. 8, 375 A.2d 1105 (1977); *Campbell, etc. v. Patton,* 227 Md. 125, 141–42, 175 A.2d 761 (1961); *Moxley v. State,* 205 Md. 507, 516–17, 109 A.2d 370 (1954); *Baltimore Transit Co. v. Castranda,* 194 Md. 421, 439, 71 A.2d 442 (1950). In *Baltimore Transit Co., supra,* this Court said:

> It is an invariable rule that in order to impeach a witness by proof of prior contradictory statements, a foundation for such impeachment must be laid by asking the witness on cross-examination whether he had made contradictory statements to a designated person and informing him of the place where and the time when the statements were supposed to have been made. [Citations omitted.]

---

**2.** This exception to the hearsay rule was approved by the United States Supreme Court in *Mutual Life Ins. Co. v. Hillmon,* 145 U.S. 285, 12 S.Ct. 909, 36 L.Ed. 706 (1892), and is presently codified as Fed.R.Evid. 803(3). *See also McCormick on Evidence* § 295 (E. Cleary 3d ed.1984); 6 Wigmore, *Evidence* §§ 17, 25–26 (Chadbourn Rev.1976).

"This," Judge Robinson said in *Brown v. State*, 72 Md. 468, 475, 20 A. 186, 188, "is but fair and just to the witness, in order that he may be enabled to refresh his recollection in regard to such statements, and afforded the opportunity of making such explanation as he may deem necessary and proper." 194 Md. at 439, 71 A.2d 442.

The attempt to establish a foundation for impeachment in this case consisted of the following:

Q  Did you tell anybody else you were going to drop the charges?

A  No, I didn't.

Q  How about his sister?

A  No.

Q  You sure of that?

A  Yes.

This cross-examination failed to apprise the witness of the time and place when the statement was supposed to have been made, and thus deprived the witness of a fair opportunity to refresh her recollection and make such explanation as she might deem necessary and proper. If offered for purposes of impeachment, this portion of Taylor's testimony was inadmissible for want of a proper foundation.

The broad discretion that is afforded a trial judge permits the admission of evidence that does not qualify as proper rebuttal. No such discretion exists to exclude evidence that would have been proper as rebuttal, and if a proper foundation had been laid for the introduction of evidence of a prior inconsistent statement, I would have agreed that its exclusion was error. Having analyzed the two parts of Taylor's proffered testimony, however, and having determined that neither part may be considered proper rebuttal evidence, the only question that remains is whether the trial judge abused the very broad discretion given him to receive evidence not otherwise qualified for admission. I think it clear in the instant case that he did not.

The record is clear that the trial judge and the parties were concerned with the exercise of the judge's discretion to admit surrebuttal testimony, and not the imposition of a sanction for violation of a rule that had never been invoked. Early in the discussion, and before the proffer of testimony was received from Taylor, the following colloquy occurred between the court and defense counsel:

> THE COURT: Why should I not [sic] permit her testimony?
>
> MR. CAPLAN: Because surrebuttal is in the discretion of the Court. I feel you would be abusing your discretion by not permitting me to put her on.

The record discloses that the trial judge considered a number of factors before exercising his discretion to exclude the evidence. At a bench conference with Judge Levin, McCray's attorney said that he had no knowledge before trial that Taylor had been present during the conversation at the jail. However, Taylor stated to the judge at the bench that she had informed counsel of that fact before trial.[3] Additionally, Judge Levin properly considered the close family relationship of the witness to McCray and the fact that she had been in the courtroom throughout the testimony of McCray and the prosecutrix, and thus was in a position to fashion her testimony, if she so desired, to precisely coincide with that of McCray. I cannot accept the suggestion, unsupported by the record, that this able and experienced trial judge acted upon the mistaken belief that he should exclude the testimony as a sanction for a rule never invoked. Rather, I think it clear he correctly determined the proffered testimony did not qualify as proper rebuttal, and in the exercise of his discretion he considered

---

3. Because the proffered testimony was not proper rebuttal evidence, I do not reach the question of whether any deceit was practiced or intended in this case, or whether a trial judge may exercise discretion to exclude otherwise admissible testimony upon a showing that the decision of opposing counsel not to have witnesses excluded pursuant to Maryland Rule 2–513 was based upon a fraudulent representation that the witness would not be called.

the several factors to which I have referred, and elected not to receive the evidence. I would affirm the convictions.

Chief Judge MURPHY has authorized me to state that he concurs in the views here expressed.