586 A.2d 829

**Helen McGILL**

v.

**GORE DUMP TRAILER LEASING, INC., et al.**

**No. 830, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

March 6, 1991.

Christopher L. Hamlin (Harry J. Trainor and Greenan, Walker, Steuart, Trainor and Billman, on the brief), Landover, for appellant.

John J. Schneider (Hardwick, Tripoda & Harris on the brief), Baltimore, for appellee, Charles County Sand & Gravel.

Keith A. Rosenberg (Meyer, Faller, Weisman and Rosenberg, Washington D.C., Joseph P. Clancy and Bastian, Clague and Clancy Chartered, Bethesda, on the brief) for appellee, Ceemar Const. Co.

Margaret A. Land, Upper Marlboro, on the brief for appellee, Gore Dump Trailer Leasing, Inc.

Argued before ALPERT, ROSALYN B. BELL and FISCHER, JJ.

ROSALYN B. BELL, Judge.

A trial judge of the Circuit Court for Prince George's County ordered that prospective witnesses other than parties remain outside the courtroom and not discuss their testimony with anyone. The trial judge did not go on to preclude those within the courtroom from revealing testimony to those who had not yet testified. Counsel related to one of his prospective witnesses at a recess what a witness had said. The trial judge prohibited the prospective witness from testifying. We hold that counsel's action constituted an infraction of the court's order, but the sanction imposed was arbitrary. We therefore reverse.

Helen McGill, appellant, allegedly leased a dump trailer from Gore Dump Trailer Leasing, Inc. (Gore Dump), appellee. The dump trailer was completely destroyed on September 10, 1986 in Charles County, on the premises of Charles County Sand and Gravel (Sand and Gravel), appellee. The dump trailer overturned while Andrew McGill, Mrs. McGill's husband and the operator of the truck and trailer, attempted to dump an overfilled trailer. The trailer had been loaded on a nearby construction site by Ceemar Contractors, Inc. (Ceemar), appellee.

The trailer was never recovered after the incident. Gore Dump thereafter filed an action for breach of contract in the Circuit Court for Prince George's County against Mrs. McGill. Mrs. McGill brought a third party action against Sand and Gravel and Ceemar. Upon request, the trial judge invoked the rule requiring the exclusion of witnesses.

Gore then called its first witness, Tammy Gore. At the close of Tammy Gore's testimony, the court called a brief recess. Apparently during this recess, counsel for Mrs. McGill discussed the testimony of Ms. Gore with Mrs. McGill and her husband, Andrew McGill.

When the court reconvened, counsel for Ceemar informed the court of the conversation between the McGills and Mrs. McGill's counsel and requested that Mr. McGill be barred

from testifying. The court ruled that counsel had violated its order and precluded Mr. McGill from testifying.

Mr. McGill was the sole witness who was present at both the execution of the lease for the trailer and the subsequent destruction of the trailer. Without Mr. McGill's testimony, Mrs. McGill was unable to establish her claim against Ceemar, and Sand and Gravel. Additionally, Mrs. McGill was unable to defend successfully against Gore Dump's claim.

After the completion of Mrs. McGill's case on the third party complaint against Sand and Gravel and Ceemar, the court entered judgment against Mrs. McGill on those claims. The jury returned a verdict for Gore Dump against Mrs. McGill. This appeal followed.

## EXCLUSION OF WITNESSES

Witnesses are excluded from the courtroom until their testimony is completed to prevent collusion. One of the earliest references to this practice appears in the Bible in the story of Susanna and the elders. Two elders had accused Susanna of adultery, claiming the adulterous act took place beneath a tree in an orchard. The two elders were brought before the crowd separately. Daniel asked each in turn what kind of tree sheltered the crime. When the answers were inconsistent, the crowd concluded the elders lied and put them to death rather than Susanna. *Daniel* 13:1–65 (Catholic Version).[1] Had the elders been able to hear or been told of the testimony of the other, they presumably would have fashioned their answers to avoid detection. The principle underlying the story of Susanna and the elders remains intact in our courts today.

Under the Maryland Rules of Procedure, exclusion of all witnesses other than the parties is mandatory if requested by either counsel prior to the beginning of testi-

---

**1.** The King James version of the Bible does not contain chapters 13 or 14 of the Book of Daniel.

mony. If the request is made after testimony has begun, it is discretionary. In addition, the court may order the exclusion of witnesses on its own initiative. Rules 2–513(a) —civil circuit court cases; 3–513(a)—District Court cases; 4–321(a)—all criminal cases. The rule does not apply to experts who are to render an opinion based on testimony given at trial, or the representative of parties who are not natural persons.[2] The granting of the request to exclude witnesses from the courtroom, however, does not require that the "witness, parties, attorneys and all other persons present in the courtroom not ... disclose to any witness excluded under this Rule the nature, substance, or purpose of testimony, exhibits, or other evidence introduced during the witness' absence." Rule 2–513(b). That prohibition is distinct from requiring that witnesses be excluded and must ordinarily be invoked by an order of the trial judge to be effective. Rules 2–513(b); 3–513(b); 4–321(b).

## RULE ON WITNESSES

In the instant case, before the testimony started, counsel for Ceemar asked, "Can we have a rule on witnesses?" The trial judge responded:

"Absolutely. The rule on witnesses has been invoked. That means all witnesses are now sequestered. In practical terms, it means all witnesses must remain outside until called to testify. After each witness has testified, that witness may not then discuss his or her testimony with anyone until the jury has rendered a verdict.

"I would ask each party to ensure that its witnesses are properly sequestered. This, of course, does not mean that corporate representatives or parties cannot be seated at the table. They most certainly can.

---

2. Although not mentioned in the Rules, under Md.Code Ann.Art. 27, § 620 (1957, 1987 Repl.Vol., 1990 Cum.Supp.), a judge need not exclude the victim of a crime of violence or a representative of the victim when they have testified at the trial.

Counsel's request for sequestration could have been more classically stated. This request has, however, become the shorthand way of asking for the full benefit of Rule 2–513(a) and (b) and its counterparts; namely that, with certain exceptions, the witnesses be excluded and those in the courtroom not discuss with any of those witnesses excluded what has occurred in the courtroom. By the same token, the trial judge could and should have been more specific.

Mrs. McGill contends that the trial judge did not impose the full restriction on communication between those inside the courtroom and witnesses excluded from the courtroom as provided in Rule 2–513(b). Hence, Mrs. McGill argues, because no order was issued, no violation took place. We agree the trial judge did not specifically state the restrictions imposed by Rule 2–513(b). If the violations had consisted of an attendee or lay person speaking to an excluded witness, there probably would have been no violation of the court's order. In the instant case, however, counsel for Mrs. McGill was the one who spoke to Andrew McGill in the corridor after one witness had testified for Gore Dump.

█ Trial judges should make every effort to communicate the requirements of both section (a) and (b) of Rule 2–513 to those in the courtroom if, in fact, they intend to impose those restrictions on them. That the trial judge intended to prohibit witnesses, attorneys and attendees from communicating the substance of the testimony given in this case is apparent from his immediate reaction to the information that counsel had spoken to one of his prospective witnesses during a short recess. That reaction was that counsel had violated his order.

█ There can be no doubt what the granting of a "rule on witnesses" communicates to an attorney. An attorney understands that (1) witnesses are excluded from the courtroom until granted permission by the court to remain; (2) witnesses may not discuss their testimony or other information with those who have not testified; and (3)

others present in the courtroom may not share any information with those who are outside and have not yet completed their testimony. Moreover, it is pellucid that the attorney for Mrs. McGill understood that that is what the trial judge meant in this case when he granted "the rule on witnesses." This is supported by the fact that Mrs. McGill's attorney never took issue with the trial judge on whether the entire rule was in effect. His position was then, and was reiterated in his motion for a new trial, that he considered both Mr. and Mrs. McGill to be his clients, giving this explanation:

"Also, throughout, however, my understanding is that I can discuss the case with my clients. Mrs. McGill is my client. She is a party. Mr. McGill is her husband, spouse, and has always been treated as my client."

Moreover, the court then stated:

"He [Andrew McGill] is a witness for your client. Counsel [for Ceemar] is absolutely right. He is your witness, and you cannot discuss what has transpired in the way of testimony in here when there has been invoked a rule on witnesses.

"[COUNSEL FOR MRS. MCGILL]: *Yes, Your Honor. I understand that.* And to the extent that we did discuss the general outline of the case, the fact that the plaintiff has gone forward and made her case, that our motion had been denied, I don't think that prejudices the defendants or any of the parties in any manner.

Mr. McGill will go ahead and testify as to what he had to testify all along."

Again, counsel never suggested that the ruling of the trial judge permitted communications on what went on in the courtroom with excluded witnesses. While the trial judge did err by not articulating the rule completely, counsel understood what the trial judge intended to do and responded accordingly. Counsel for Mrs. McGill now contends the trial judge did not prohibit communications with excluded witnesses. We find (1) that issue was not preserved for appeal; and (2) counsel's position is not credible. While we

do understand how he could have considered Mr. McGill to be his client, this does not make Mr. McGill a party.

## THE SANCTION

Rule 2–513(c) provides for a specific sanction:

"The court may exclude all or part of the testimony of the witness who receives information in violation of an order under this Rule."

In *McCray v. State,* 305 Md. 126, 134, 501 A.2d 856 (1985), the Court of Appeals discussed the background of the exclusion rule:

"Prior to the adoption of the exclusion rule it was within the discretion of the trial court whether to exclude a witness, although abuse of discretion was reversible error. Since the adoption of former Rules 536 and 755, now Md. Rule 2–513, however, it has been held that the rule is now obligatory and no longer discretionary." (Citations omitted.)

The Court then articulated the standard for imposing a sanction pursuant to the Rule:

"As stated in *Frazier v. Waterman S.S. Corp.,* 206 Md. 434, 446, 112 A.2d 221 [ (1955) ], ' "The ascertainment of the truth is the great end and object of all the proceedings in a judicial trial," we think that the complete exclusion of the testimony of witnesses for a violation of the sequestration rule is not lightly to be imposed as a penalty upon even an offending party.' "

*McCray,* 305 Md. at 134, 501 A.2d 856 (citation omitted).

■ In the instant case, all the court knew of the conversation was the general comment of counsel for Ceemar:

"Just now in the hallway when I was coming back to the court, I heard [counsel for Mrs. McGill] talking to his client and her husband, and it's pretty clear to me he was discussing what the testimony had been of the witness, and that's certainly contrary with the Court, who admonished the witnesses who have been excused from the

courtroom and not yet testified, and I would ask that he not be allowed to testify at this posture."

Counsel for Mrs. McGill responded:

"Your Honor, throughout the case I would simply say that I have not discussed the direct testimony of Miss Gore with my client, with Mr. McGill. I indicated that Miss Gore made out their case, that the plaintiff made the case, and that we had to go forward with our case now.

"That's nothing more than I have discussed with Mr. McGill throughout. These are the claims, and if the claims are substantiated by the evidence, we can go forward."

Later, counsel for Ceemar stated:

"I don't make the statement cavalierly. I mentioned it to [counsel for Charles County Sand and Gravel] when I came in, because I wondered, because I can tell you that I heard [counsel for Mrs. McGill] saying, 'She said she called you a number of times.'

"THE COURT: That's enough. I am going to grant the motion. Mr. McGill will not testify. That will be the sanction for violation of the rule to sequester witnesses, and that will be the sanction."

The court made no effort to discover what was actually said to the witness. What harm, if any, was occasioned by the communication? What alternatives, if any, were available to correct the harm? In short, he did not exercise his discretion. He automatically imposed a penalty for an infraction of the rule. While it is not appropriate for us to determine what penalty should have been exacted, the court made no investigation and the record certainly does not appear to support such a draconian result.

This is not a case where the prospective witness would be tailoring his testimony to that of the previous witness. Only one witness had testified and she was plaintiff's witness who made out a prima facie case for Gore Dump. Counsel for Mrs. McGill pointed out to the court that Mr.

McGill would be testifying "as to what he had to testify to all along."

■ Moreover, that first witness made no direct statements about Ceemar or Sand and Gravel. Certainly, no harm could have been visited on either of those two companies and we really do not see from the record that any harm was done to Gore Dump. Assuming it was, however, based on our knowledge of the events, at least two remedies immediately occur to us that could have protected the balance of the litigants without such a drastic penalty to Mrs. McGill. First, the court could have excluded that part of Mr. McGill's testimony as it related to the issues testified to by the witness. Second, in a proper case, the court could have told the jury what had occurred in the hall and let the jury evaluate Mr. McGill's testimony in that light.

■ If the trial court is faced with such a situation, it should: (1) excuse the jury temporarily; (2) order the witnesses to and the participants in the alleged infraction not to discuss the matter; (3) then have each witness and participant testify under oath regarding the infraction; (4) make his or her findings of fact on what occurred and determine what harm, if any, was done; (5) let the parties suggest dispositions that best fit the case; and (6) decide upon the least onerous sanction that will protect the litigants.

JUDGMENT REVERSED.

CASE REMANDED FOR A NEW TRIAL.

COSTS TO BE PAID BY APPELLEES.